No. 65.—W. W. Howe v. Whited & Gibbs. Smith, Newman & Co. and others, Third Opponents and Intervenors.

A purchaser of property under an order of seizure, who claims the fruits of the sale, is precluded from questioning the validity of the decree ordering the immovables by destination to be sold with the mortgaged property.

A factor or merchant has no privilege on the mules, cattle and implements attached to the plantation, or on the proceeds of the sale thereof, for advances made or supplies furnished to make the crop, nor has the factor any privilege for money advanced to the planter who afterwards applied it to the payment of the laborers for working the crop. By giving the fund this direction by the planter and applying it to the settlement of privilege accounts, the factor does not become subrogated to the privilege. The privilege of the factor does not result from subrogation, but springs directly from the law which gives it.

The factor has a privilege on the crop for advances made, and supplies furnished in aid of its production. Acts of 1867, page 351.

Where the land, immovables by destination, and the growing crop have been sold in block, the value of the crop may be ascertained by proof after the sale has been made, and the privilege of the factor attaches to the proceeds.

A factor having a privilege on a crop of cotton for supplies furnished, does not lose it by becoming the purchaser thereof at sheriff's sale. In such a case the privilege passes from the thing and attaches to the proceeds.

APPEAL from the Twelfth District Court, parish of Ouachita. *Crawford, J.* J. & S. D. McEnery, for plaintiff W. W. Howe and intervenor S. D. Gridley, appellants. *W. J. Q. Baker,* for Smith, Newman & Co., third opponents, appellees. *John Ray,* for Blanchin & Giraud, intervenors, appellees.

WYLY, J. In July, 1867, plaintiff sued out an order of seizure and sale against the lands of the defendants in the parish of Ouachita, together with the standing crop and the immovables thereon by destination, to wit: The mules, cattle and implements.

On the second November, 1867, the property was sold in block to Blanchin & Giraud for $8225, who paid over to the sheriff $1370 thereof, retaining the balance in their hands to discharge the outstanding notes secured concurrently by the same act of mortgage.

The day before the sale Smith, Newman & Co. filed a third opposition, claiming a privilege on standing crop of cotton and the mules,

cattle and implements seized, and asking to be paid by preference out of the proceeds of the sale thereof, the indebtedness due by the defendants for money and supplies advanced by McCombie & Child, through their agents, Lee Crandall & Co., to them, and which indebtedness they allege to have acquired.

H. A. Parker also on the same day filed an opposition, claiming a preference out of the proceeds for the sum due him for labor as a mechanic.

On the twenty-sixth November, 1867, Blanchin & Giraud filed their petition of intervention, claiming an amount due them for advances and supplies, to be paid by preference out of the proceeds of the sale of the crop, mules, cattle and farming implements.

A. G. Gridley subsequently intervened, claiming the *pro rata* due him as mortgage creditor out of the proceeds of the sale, filing with his petition a certified copy of the judgment of the Fourth District Court of New Orleans, ascertaining and fixing the amount due him as holder of the outstanding notes secured by the same mortgage under which the property was sold.

In answer to the third opponents and intervenors, the defendants, Whited & Gibbs, pleaded the general issue.

On the trial the District Judge dismissed the opposition of Parker, decreed that Smith, Newman & Co., and Blanchin & Giraud be paid by preference out of the cotton and personal property for the amount of cash advanced by them to pay the laborers, and that W. W. Howe and A. G. Gridley, mortgage creditors, be paid *pro rata* out of the proceeds of the sale of the lands, and out of the balance of the proceeds of the sale of the immovables by destination, after paying the opposers, Smith, Newman & Co. and Blanchin & Giraud, for the cash advanced to pay laborers as aforesaid.

From that judgment the mortgage creditors, Howe and Gridley, have appealed. The opposers, Smith, Newman & Co. and Blanchin & Giraud, have also appealed. H. A. Parker, whose demand was dismissed, has not appealed.

The contest is now between Howe and Gridley, the mortgage creditors on the one side, and the privilege creditors, Smith Newman & Co. and Blanchin & Giraud on the other, there being no conflict of interest between the mortgage creditors. There is a conflict of interest, however, between the privilege creditors. The issues, as presented in the pleadings, are over the proceeds of the sale. The validity of the decree and the legality of the sale are not at issue.

Smith, Newman & Co. only claimed a preference on the proceeds of the movables and cotton attached to the plantation, and asked for an order requiring the sheriff to hold the same subject to the action of the court. Blanchin & Giraud being the purchasers, and claiming the fruits of the sale, can not question the legality of the decree ordering the immovables by destination to be sold with the mortgaged premises.

The defendants, Whited & Gibbs, took no appeal from the order, made no resistance to the sale, although present and although duly made parties thereto.

During the year 1867 the defendants obtained cash and supplies from McCombie & Child, through their agents, Lee Crandle & Co., giving them their mortgage note for $15,000, to cover a prospective indebtedness for supplies and cash to be furnished from month to month, and also agreeing in the act of mortgage to ship them their crops.

After making considerable advances of money and supplies to the defendants, McCombie & Child failed. Smith, Newman & Co. instituted a suit of attachment against them, seizing their claims against the defendants, and finally became the purchasers thereof.

After the failure of McCombie & Child, Blanchin & Giraud made advances in cash and supplies necessary to complete the crops of the defendants.

The first question to determine is, have the opposers, Smith, Newman & Co. and Blanchin & Giraud, a privilege on the mules, cattle and implements attached to the plantations, or in the proceeds of the sale thereof?

As furnishers of cash supplies they undoubtedly had a privilege on the crops. (Act of 1867, page 351.) Under the act of 1867 amending article 3184 of the Civil Code, the laborers had a privilege on the crops and the movables attached to the plantations of defendants. The opposers then have no privilege upon the personal property for their advances. They claim, however, to be subrogated to the privilege of the laborers, that the money advanced to the defendants was applied by them to the payment of the laborers, and therefore they are legally subrogated to the lien of the latter on the stock and other movables attached to the premises.

To this proposition we can not assent. It matters not what may have been the destination of the funds advanced to the defendants, Whited & Gibbs, no legal subrogation accrued in favor of their factors. The moment the cash was drawn there arose between them and the latter the relation of debtor and creditor. The items and amounts drawn were charged up to the defendants instantly, as appears by the accounts filed in this case. If the money advanced by these factors had been applied by the defendants to the payment of an account for supplies for their plantation, the factors would not have been subrogated to the privilege of those who had furnished the supplies. (Hen. Digest 1250, No. 5.) Even though they advanced money for that express purpose no subrogation would accrue. The factors' lien on the crop does not result from subrogation because the planter has applied the funds to the settlement of privilege accounts; it springs directly from the law giving the privilege for cash advanced in aid of the crop. (Act 1867, page 351.) Hen. Digest 1250, No. 5; 12 A. 41; 13 A. 52. The principle is the same when the planter applies the funds to the

payment of the privilege claim of the laborers.   The factor advancing the funds is not subrogated to the laborer's privilege.

The privilege of the opposers, however, attach to the cotton for the respective amounts advanced by them in aid of the crop.   (Acts 1867, page 351.)

The parties having a privilege on the cotton could have caused a separate appraisement before the sale, in order to furnish data upon which to ascertain the amount of the proceeds of the sale thereof.   But as proof of the value of the cotton has been made (without objection) since the sale, we think the privilege creditors should receive the amount the cotton was proved to be worth.

The value of the cotton was estimated differently by the witnesses. The defendant, Whited, who raised the crop, testified its value to be from $1000 to $1200.   We think this witness had probably the more correct idea of the value of the cotton standing in the field, and we will fix the value at his highest estimate, $1200.

As there is no contest between the mortgage creditors, Howe and Gridley, we are of opinion, after paying the costs of the sale, all the proceeds in the hands of the sheriff and purchasers (except the $1200, the value of the cotton), should be paid over *pro rata* to Howe and Gridley in settlement of their prior mortgage on the property sold.

As between the opposers, Smith, Newman & Co. and Blanchin & Giraud, we cannot perceive that either has precedence over the other. From the evidence we are satisfied that they each have a valid claim and privilege on the cotton for the amount demanded—that each having made advances in cash and supplies necessary to make the crop, have a furnisher of supplies' lien thereon; and as the proceeds of the cotton is not sufficient to satisfy both claims, they should be paid *pro rata* out of that fund.

Blanchin & Giraud have not relinquished or waived their privilege by becoming the purchasers, nor were their claims and privilege extinguished by confusion.   When the thing was sold the privilege attached to the proceeds.   They acquired by the purchase the thing, not the proceeds.   So far as the proceeds are concerned, the relation of debtor and creditor does not unite in the purchasers.   The waiver or concession of precedence on the crops of the defendants made (by notarial act) by Lee Crandall & Co. in behalf of McCombie & Child in favor of Blanchin & Giraud, on the twenty-second June, 1867, can not give the latter any preference on the cotton over Smith Newman.& Co.   It was not in the power of Lee Crandall & Co., as agents for McCombie & Child, to make such a covenant at the time, in relation of their principals' claim against the defendants, Whited & Gibbs.   The attachment of Smith, Newman & Co. had been previously levied, the parties garnisheed had already answered, and the claim had passed from the control of Lee Crandall & Co., as agents of McCombie & Child.

When Smith, Newman & Co. obtained their judgment, contradictorily with the curator *ad hoc*, their rights to the claim reverted back to the date the attachment was levied.   Their purchase of the claim under their judgment has invested them with complete ownership.   No waiver, relinquishment, or transfer of claims by a party after the attachment is levied is valid, if the attachment be followed up with a judgment and sale.

The failure to notify the defendants, Whited & Gibbs, that the claims of McCombie & Child had been attached, did not invalidate the attachment.   Notice thereof to Whited & Gibbs would have prevented any settlement or equities from arising between them and McCombie & Child; but they have made no settlement.

Failure to notify the defendants did not authorize Lee Crandall & Co., as agents of McCombie & Child, to enter into the agreement with Blanchin & Giraud to relinquish or waive to the latter the privilege belonging to the claim attached.

The record shows that the purchasers paid into the hands of the sheriff $1370.   Of this $134 55 was paid for costs of seizure and sale in the District Court, and one thousand dollars was paid to plaintiff by consent.   The balance, $235 45, is now ordered to be paid over to the plaintiff.

The purchase price was $8225.   Deducting from this the costs of seizure and sale and the value of the cotton, $1200, there remains $6890 to be divided *pro rata* between the mortgagees, as follows :   To the plaintiff $2250 80, and to the intervenor, Gridley, $4639 65.   Deducting from plaintiff's *pro rata* the sum of $1000 paid him by consent, and the sum of $235 45 to come to him from the balance in the sheriff's hands, the purchasers, Blanchin & Giraud, still owe the plaintiff $1015 35, and to the intervenor, Gridley, $4639 65.   On these sums they owe interest at eight per cent. per annum from the second November, 1867, the day of sale, having had the use of these amounts and the use of the property, on which they were secured by first mortgage. 14 A. 149.

The proceeds of the crop, $1200, will be divided between Smith, Newman & Co. and Blanchin & Giraud ratably, as follows :   To the former $595; to the latter $605, which they will retain.

It is therefore ordered, adjudged and decreed that the judgment appealed from be avoided and reversed.   It is further ordered and decreed that the sum of $235 45, remaining in the hands of the sheriff in this case, be paid over to the plaintiff.   That the intervenors and purchasers, Blanchin & Giraud, of the city of New Orleans, pay to the intervenors, Smith, Newman & Co., the sum of $595, and retain in their own hands $605.   That the said Blanchin & Giraud pay to the plaintiff, William W. Howe, the sum of $1015 35, balance due him as mortgagee, with eight per cent. interest per annum thereon, from No-

vember 2, 1867, till paid, and to Albert G. Gridley, intervenor herein, the sum of $4639 65, with eight per cent. per annum interest thereon, from second November, 1867, until paid, with mortgage to secure said sums on the property. purchased, as per act passed before William Shannon, notary, eighteenth April, 1866, and if said sums be not paid that execution issue therefor. (20 A. 159.) And that Smith, Newman & Co. and Blanchin & Giraud pay the costs of the appeal, and that the costs of the District Court after the sale and prior to the appeal be paid by the plaintiff and the intervenors, one-fourth by each. (11 A. 260.)

Rehearing refused.

(Mr. Chief Justice Ludeling and Mr. Justice Howe were recused in this case.)