(101 South. 403)

No. 25908.

BANK OF HOUMA v. SHAFFER et al.
(SWIFT & CO., Intervener).

(June 27, 1924. Rehearing Denied by Whole Court Sept. 25, 1924.)

*(Syllabus by Editorial Staff.)*

Agriculture ⬥11—Debt for fertilizer held privilege on crop, though furnished during prior year.

Under Rev. Civ. Code, art. 3217, making debts due for necessary supplies furnished to farm privilege "on the crops of the year and the proceeds thereof," debt due for fertilizer furnished during one year and used during another was privilege on crop of such other year, in view of articles 18, 2045–2047, 2562–2564, and 2687.

Appeal from Twentieth Judicial District Court, Parish of Terrebonne; Hugh M. Wallis, Jr., Judge.

Action by the Bank of Houma against John D. Shaffer and others, in which Swift & Co. intervened. Judgment for intervener, and plaintiff appeals. Affirmed.

J. A. O. Coignet, of Thibodaux, and Terriberry, Rice & Young and A. R. Martinez, both of New Orleans, for appellant.

Allen J. Ellender, of Houma, and Monroe & Lemann and Walter J. Suthon, Jr., all of New Orleans, for appellee Swift & Co.

By Division C, composed of OVERTON, ST. PAUL, and THOMPSON, JJ.

ST. PAUL, J. The Revised Civil Code provides as follows:

Article 3217: "The debts which are privileged on certain movables, are the following:

"1. * * * Debts due for necessary supplies [furnished] to any farm or plantation, * * * on the crops of the year and the proceeds thereof.

"2. * *. * "

The Chattel Mortgage Act, No. 198, of 1918, p. 372, provides as follows:

"Sec. 4. Every [chattel] mortgage shall be. a lien on the property mortgaged from the time same is filed for recordation, * * * and said lien shall be superior in rank to any privilege or lien arising subsequently thereto."

### I.

On February 1, 1920, Swift & Co. sold to defendants 200 tons of fertilizer, of which one-half was to be used on Ardoyne Plantation and one-half on Crescent Plantation, for the purpose of raising crops of sugar cane on said plantations for the year 1920. One-half the purchase price was paid in cash at the time, and the balance (net $6,319.50) was to be paid on or before December 1st, with interest at 6 per cent.

The Crescent Plantation having been sold by the defendants, and no crops having been planted by them on that plantation during the year 1920, it therefore resulted that at the end of said year defendants had still on hand, on their Ardoyne Plantation, the 100 tons of fertilizer which were to have been used on said Crescent Plantation.

### II.

On January 23, 1922, defendants mortgaged to plaintiff (and the Marine Bank of New Orleans) for $12,000, the masse-cuite then on Ardoyne Plantation, being the semi-manufactured product of the crop of sugar cane raised on said plantation during the year 1921.

### III.

It is shown, however, that the 100 tons of fertilizer which had been purchased for, but not used on, Crescent Plantation, and for which Swift & Co. had not been paid, had been used on Ardoyne Plantation in 1921 for the production of the crop of sugar cane, out of which the aforesaid masse-cuite had been made.

### IV.

In these proceedings plaintiff has seized the aforesaid masse-cuite under its chattel mortgage, and Swift & Co. have intervened, claiming a superior privilege thereon. As a chattel mortgage outranks only privileges "arising subsequently thereto," it follows that the only question presented is whether Swift & Co. have *any privilege at all* upon the aforesaid masse-cuite; i. e., the semi-manufactured product of the crop of sugar cane grown on Ardoyne Plantation for the year 1921, with the 100 tons of fertilizer purchased from Swift & Co., and not yet paid for.

### V.

We have quoted the law under which the intervener claims a privilege. It will be observed that the privilege is granted for "debts due for necessary supplies *furnished*," and that said privilege attached to "the crops of *the year*." Hence the question to be solved is whether "the year" meant by the statute is that in which the supplies were *furnished*, or that in which they were *actually used*. But:

"The universal and most effectual way of discovering the true meaning of a law, when its expressions are dubious, is by considering the reason and spirit of it, or the cause which induced the Legislature to enact it." Revised Civil Code, art. 18.

And it is clear that when the legislator granted a privilege on the crops of "the

year," he had in mind not so much the *calendar year*, as the *crop year*, which might or might not correspond, according to circumstances (see R. C. C. art. 2687); that he was concerned not so much about the precise date, by day, month, and calendar year, at which supplies were furnished and crops gathered, as with the fact whether or not the supplies furnished were in any way connected with the growing of the very crop gathered, the reason thereof being obvious.

### VI.

Hence, one who had furnished money and supplies for the crop of one year was held not entitled to a privilege for the unpaid balance of his advances for that year upon the crop produced in the following year, over another who had advanced money and supplies *"to assist in making said crop* [of the following year]." Given v. Alexander, 25 La. Ann. 71, 72.

And when parties had furnished "cash supplies" for raising the crop of a certain year, it was held that they "undoubtedly had a privilege on the crops [of that year] * * * for the respective amounts advanced by them *in aid of the crop."* Howe v. Whited & Gibbs, 21 La. Ann. 495, 497, 498.

In Shaw & Co. v. Grant, 13 La. Ann. 52, 53, 54, this court *repudiated* utterly the argument that "in order to judge of the question whether the [privileges for] supplies are to attach to a crop, or not, it is only necessary to look at the calendar month in which they were furnished." But the court *did* argue thus:

"Suppose * * * his [a planter's] factor furnishes him in one lot, on the 31st of December [of a given year] all the pork or corn he needs for the coming year in order to make and gather his new crop. Would his privilege be defeated [as to the new crop] because the item was furnished in the year [before]? Would it not be a sufficient answer to say and prove that the provisions were furnished for the crop of [the new year], and were actually used and consumed in making it?"

156 LA.—33

In Bank of America v. Fortier, 27 La. Ann. 243, 245, this court said:

"By article 3217, Revised Code, the furnishers of supplies or cash *actually used* for the cultivation of a plantation have a privilege on the crops of *that year.* * * * *"

In Succession of Rogers, 41 La. Ann. 400, 7 South. 692, and again in Succession of Waddell, 44 La. Ann. 361, 10 South. 808, this court held that the privilege for supplies could be enforced only on the crop (or its proceeds) for which the advances had been made.

In Martin v. Lastrapes, 22 La. Ann. 380, the *official reporter* understood the court as holding that a privilege on the crop of a given year covers only such supplies as "have been used in making the crop of that year." In Wallace v. Urquhart, 23 La. Ann. 469, the same official reporter understood the court to decide that the privilege for supplies on the crop of the year covered only such supplies as "are used in producing it." In Succession of Osborn, 40 La. Ann. 615, 4 South. 580, the Chief Justice (Bermudez) understood that he was deciding that the privilege on a crop did not cover supplies which had not been used in producing such crop.

And finally, to make a long story short, this court has repeatedly decided that the right to a privilege upon a crop or its proceeds depends upon whether the supplies furnished were or were not *used for the making of that crop.* National Bank of Commerce v. Sullivan, 117 La. 163, 41 South. 480; Levert v. Berthelot, 127 La. 1004, 1018, 54 South. 329; Brooklyn Cooperage Co. v. Cora Planting Co., 137 La. 807, 814, 69 South. 195; Union Seed & Fertilizer Co. v. Supple's Sons Planting Co., 139 La. 692, 694, 71 South. 949.

### VII.

From the foregoing we see that this court has always understood that the vital question, in determining whether or not debts due for supplies furnished do or do not give a

privilege on the crop of a given year, is *whether or not said supplies have been used in making said crop*, and not the year in which such supplies have been furnished; and it is still our conclusion that such is the proper test.

## VIII.

In the case before us, Swift & Co. had the right to demand the return of the fertilizer when defendants failed to pay for it at the time agreed upon. R. C. C. arts. 2045–2047; Id., 2561–2564. Accordingly, when they consented to allow defendants to use it for the crop of the following year, it was, for all practical purposes, as if they had then and there sold (or furnished) such fertilizer for use during the coming year. Certainly they might have demanded a retrocession, and then made a resale; but this would have been simply a vain and idle formality, which would not have changed in any way the actual situation of the parties. Hence we conclude that Swift & Co. *furnished the fertilizer* for the crop of sugar cane raised on Ardoyne Plantation in the year 1921, and have therefore a privilege on the massecuite or semimanufactured product of said crop, superior to plaintiff's chattel mortgage thereon.

### Decree.

The judgment appealed from is therefore affirmed.

Rehearing refused by the WHOLE COURT.