FOURNET, Justice.
 

 Plaintiffs instituted this suit against the Fidelity & Deposit Company of Maryland, surety on the bonds furnished by Priest, Montagnet & Roshlco, Inc., as a real estate broker under the provisions of Act No. 236 of 1920, to recover the sum of $1,250, with interest and attorney fees, alleged to have been paid by them to the said corporation in pursuance of- a contract for the purchase of real estate, which was never delivered to them.
 

 For cause of action plaintiffs alleged in effect that in the years 1927, 1928, and 1929, Priest, Montagnet & Roshlco, Inc., was licensed and bonded as a real estate agent and broker to do business in the
 
 *381
 
 City of New Orleans in accordance with Act No. 236 of 1920, with the defendant Fidelity & Deposit Company of Maryland as surety on its bond, during which time plaintiffs paid to the said corporation the sum of $1,250 in pursuance of a contract dated August 27, 1927, whereby the corporation agreed to sell to them lots 3 and 4, Square 5, in the Roselañd Park subdivision and gave them a so-called “bond for deed” for the property; that the said corporation, after having changed its name by amendments to the charter, first to Montagnet & Roshko, Inc., and then to Montagnet & Jones, Inc., went out of existence soon after plaintiffs had paid the last installment on the contract in February of 1929, and the whereabouts of its officers and directors were unknown to plaintiffs; that the said contract was executed and the consideration recited therein received by the said corporation, its officers and directors, with the intention of defrauding plaintiffs, for they well knew at the time that the tract of land of which the lots purchased by plaintiffs form a part was burdened with a large mortgage, making it impossible to give plaintiffs a clear title to the property; and that the said corporation and its surety, having failed to tender title or to pay the amount of the claim within 30 days after demand, plaintiffs are entitled to 10% attorney fees under the provisions of Act No. 225 of 1918, in addition to the $1,250 paid for the real' estate.
 

 The defendant in its answer -denied liability for the reason that the plaintiffs dealt with Priest, Montagnet & Roshko, Inc., as the owner of the real estate and not as a real estate broker, as defined by the act. Plaintiffs then filed a motion for a judgment in their favor on. the face of the pleadings and the defendant excepted thereto on the ground that plaintiffs’ petition disclosed neither a cause nor a right of action. The trial judge overruled the exceptions and, on the merits, rendered judgment in favor of plaintiffs as prayed for. The defendant appealed suspensively from the judgment to this court, which appeal, on the motion of the appellee, was transferred to the Court of Appeal for the Parish of Orleans, because of lack of jurisdiction. See Buras v. Fidelity & Deposit Company of Maryland, 195 La. 244, 196 So. 335. The case is now before us on a writ of certiorari to review the judgment of the Court of Appeal reversing the judgment of the lower court and dismissing plaintiffs’ suit. See 198 So. 396.
 

 It is contended by the defendant that it became surety on the bond of Priest, Montagnet & Roshko, Inc., as a real estate broker under the provisions of Act No. 236 of 1920 and that inasmuch as plaintiffs have failed to allege affirmatively in their petition they were dealing with the corporation as a real estate agent or broker as defined by Section 2 of the act, their petition discloses neither a cause nor a right of action.
 

 Section 1 of the act provides that after January 1, 1921, “it shall be unlawful for any person, firm, association, co-partnership or corporation * * * to engage in the business or capacity,
 
 either directly or indirectly,
 
 of a real estate broker * * *
 
 *383
 
 within this State without first obtaining a license under the provisions of this Act,” and Section' 16 forbids anyone to conduct a real estate agency or deal in real estate as broker or agent without first furnishing a bond, with good and solvent surety, to insure that the objects and purposes of the business shall be honestly conducted and that such person or firm will pay the damages resulting from the operation of the business. A “real estate broker” is defined in Section 2 to be “any person, firm, partnership, association, co-partnership or corporation, who for a compensation or valuable consideration sells or offers for sale, buys or offers to buy, or negotiate the purchase or sale or exchange of real estate, or who leases or offers to lease or rents or offers for rent, any real estate or the improvements thereon for others,
 
 as a whole or partial vocation.”
 
 In the same section it is declared that
 
 the provisions of the act shall not apply to anyone “who, as owner or lessor, shall either individually or through an employee or representa tive not otherwise engaged in the real estate business perform any of the acts aforesaid with reference to property owned by them,
 
 nor shall the provisions of this Act apply to persons holding a duly executed power of attorney from the owner for the sale, leasing or rental of real estate, nor shall this Act be construed to include in any way the services rendered by an attorney at law in the service of a client, nor shall it be held to include a receiver, trastee in bankruptcy, administrator, executor, tutor, or civil sheriff for any parish of this State, nor a trustee selling under a deed of trust. * * * ” (Italics ours.)
 

 This court, in the case of Trentman Co. v. Brown, 176 La. 854, 147 So. 14, 15, had for consideration the exceptions to the act and, in construing the same in its original opinion, said Section 2 “declares that its provisions shall not apply to those who ‘as owner or lessor, shall either individually or through an employee or representative not otherwise engaged in the real estate business perform any of the acts aforesaid with reference to property owned by them,’ nor to persons ‘holding a duly executed power of attorney from the owner for the sale, leasing or rental of’ real estate,’ nor to an attorney at law rendering services to a client. Reading these provisions together, we think that the person ‘holding a duly executed power of attorney from the owner’ means one ‘not otherwise engaged in the business of real estate,’ who is acting as the ‘alter ego’ of an owner in an isolated transaction. * * * ” A rehearing was granted for the purpose of reconsidering this holding and the court concluded that
 
 “The exemption was not intended to protect those engaged in selling real estate as a business,”
 
 since it “was intended to have effect and the Legislature did not intend that its provisions could be defeated by the persons engaged in the business which it sought to regulate.” (Italics ours.)
 

 But it has been suggested that because a comma does not separate the word “representative” from the clause “not otherwise engaged in the real estate business” this clause modifies “employee or representative” and not “owner or lessor,” and consequently the clause does not refer to a
 
 *385
 
 real estate agent, or broker dealing with his own property.
 

 “The universal and most effectual way of discovering the true meaning of a law, when its expressions are dubious, is by considering the reason and spirit of it, or the cause which' induced the Legislature to enact it.” Article 18, Revised Civil Code. “Punctuation * * * cannot control its (a statute’s) construction against the manifest intent of the legislature, and the court will punctuate or disregard punctuation * * * to ascertain and give effect to the real intent * * *” (59 Corpus Juris 989, Section 590. Brackets ours), and the doctrine of the “last antecedent” that “relative and qualifying words, phrases, and clauses are to be applied to the words or phrases immediately preceding, and are not to be construed as extending to or including others more remote” is “merely an aid to construction and will not be adhered to where extension to a more remote antecedent is clearly required by consideration of the entire act.” 59 Corpus Juris 985, Section 583. See, also, State ex rel. Wynne v. Lee, 106 La. 400, 31 So. 14; Succession of Baker, 129 La. 74, 55 So. 714, Ann.Cas.1912D, 1181; Thibaut v. Board of Commissioners of Lafourche Basin Levee District, 153 La. 501, 96 So. 47; Dawson v. Ohio Oil Co., 153 La. 657, 96 So. 508; Bank of Houma v. Shaffer, 156 La. 1022, 101 So. 403; Saint v. Allen, 169 La. 1046, 126 So. 548; City of Shreveport v. Gregory, 186 La. 407, 172 So. 435; Ford v. Delta & Pine Land Co., 164 U.S. 662, 17 S.Ct. 230, 31 L.Ed. 590; and 36 Cyc. 1117.
 

 The primary object of Act No. 236 of 1920, as expressed in its title, is
 
 "to regulate the mode and manner of conducting the affairs and business of Read Estate,”
 
 and the provisions found therein requiring the licensing and bonding of real estate brokers and agents and defining them were only the modes and methods adopted by the legislature as a means to the end of regulating the business of real estate. The definition of a “real estate broker” above quoted includes
 
 anyone who deals in real estate for others, either “as a whole or partial vocation.”
 
 In Section 3 it is emphasized that anyone dealing in real estate for others,
 
 “except as herein [in Section 2] specifically excepted,”
 
 shall be deemed real estate brokers within the meaning of the act. It necessarily follows that the above definition, without any exception or qualifying clause would, of itself, exclude anyone selling or otherwise handling his own real estate, since the definition includes only those dealing in real estate for others, and the provision —that the act has no application to those “who, as owner or lessor, shall either individually or through an employee or representative not otherwise engaged in the real estate business perform any of the acts aforesaid with reference to property owned by them” — would be useless and meaningless unless by such provision the legislature intended to subject to the operation of the act all persons dealing in real estate except those who, as owner or lessor, deal with their own property and are “not otherwise engaged in the real estate business.” We are therefore of the
 
 *387
 
 opinion that it was the intention of the legislature to except from the provisions of the act only those owners or lessors of property who were not otherwise engaged in the real estate business, either as a whole or a partial vocation, and that the omission of a comma after the word “representative” was a mere inadvertence. We are fortified in this view for it is in keeping with the spirit of the act as well as its expressed object, and, beside giving a reasonable effect to the clause in controversy, it also gives effect to every provision in Section 16 forbidding anyone to open, engage in, or conduct a real estate agency without first furnishing a bond with solvent surety to the Governor of the State for the benefit of any person in interest as his interest may appear, conditioned that such party “shall honestly conduct said business and shall pay all damages which may result from his or their actions as such real estate agents or brokers; and that any one who may have been injured or damaged by said agent or broker by any wrongful act done in the furtherance of said business or by any fraud or misrepresentation by said agent or broker shall have the right to sue for the recovery of such damages before any Court of competent jurisdiction.”
 

 We therefore conclude that the trial judge properly overruled the exceptions of no cause and no right of action.
 

 On the- merits of the case the record shows that in July of 1926 Priest, Montagnet & Roshko, Inc., who had only in the March previous been incorporated
 
 for the purposes of buying and selling real
 
 estate,
 
 promoting suburban additions, and acting as agents of owners of property,
 
 purchased, in connection with the business of the corporation, from M. C. Soniat du Fossat, a large tract of land in Jefferson Parish, subdivided into approximately 451 lots and forming a part of what had originally been known as the Soniat or Tchoupitoulas Plantation, with the view of developing and promoting the same as a suburban sub-division, known as the Rose-land Park sub-division. The consideration of the sale was $75,030, of which $18,000 was paid in cash, and five promissory notes in the sum of $11,406 each, payable yearly thereafter, secured by vendor’s lien and mortgage on the property, were given for the balance of the purchase price. In the act of sale it was provided that the vendor would release this lien and mortgage from any lots sold by Priest, Montagnet & Roshko, Inc., upon the payment by the corporation of amounts varying from $300 to $100, dependent upon the location of the lots sold.
 

 The uncontradicted testimony in the record shows that Priest, Montagnet & Roshko, all three, called on plaintiffs at their home at the mouth of the Mississippi .River, in Plaquemine Parish, and introduced themselves as real estate agents or brokers, presenting their cards as such, and that, on August 27, 1927, they sold the plaintiffs lots 3 and 4 of the 5th Square in this sub-division, under a contract to sell. In February of 1929, all of the purchase price having been paid to the corporation, as agreed upon, plaintiffs demanded that Priest, Montagnet & Roshko, Inc., trans
 
 *389
 
 fer title to the lots purchased. Some days later they (plaintiffs) received a letter dated February 21, 1929, and signed by Montagnet & Roshko, Inc., acknowledging the final payment on the lots purchased by plaintiffs and assuring them the titles would be transferred as soon as the papers could be prepared by counsel. However, even though the corporation could have •obtained a release of the lots from the vendor’s lien and mortgage upon the payment of $125 on each lot, it failed to transfer these titles to plaintiffs and, in 1932, the vendor instituted suit against the corporation, obtaining a judgment against it for the unpaid balance of the purchase price ($11,406) plus interest, attorney fees and costs, with recognition of his vendor’s lien and privilege on the 151 lots (including the lots purchased by plaintiffs) remaining in the tract that had not been released in accordance with the terms of the contract.
 

 When the corporation obligated itself to deliver to plaintiffs “good and sufficient warranty title” to the property upon payment of $1,250, it could have, under its contract with Soniat, obtained a release of the vendor’s lien and mortgage resting on the lots upon the payment to Soniat of $250 ($125 on each lot), only half of the cash Original Payment by the plaintiffs for the lots. Its failure, under those circumstances, to deliver titlfe to plaintiffs after accepting the $1,250 paid by them, constitutes a wrongful act on its part within the meaning and contemplation of the act, for which it and the surety on its bond are liable to the plaintiffs.
 

 For the reasons assigned, the judgment of the Court of Appeal for the Parish of Orleans is annulled and set aside and the judgment of the lower court is affirmed; the defendants to pay all costs.