REID, Judge.
Plaintiff originally brought this suit against Lee Roy Frantom, a real estate broker and his surety on the real estate bond, Maryland and Casualty Company for $8500.00 plus legal interest from date of judicial demand until paid, plus an additional ten per cent on both principal and interest as attorney’s fees from the defendant Maryland Casualtj'- Company, and for all costs.
The suit is predicated upon a sale of three camp sites in Ascension Parish which defendant Lee Roy Frantom as real estate broker sold to plaintiff Thomas G. Matthews for the price and sum of $8000. The suit is based on the fact that Frantom represented that the lots were free of mortgages when as a matter of fact the lots were burdened by two mortgages, first in favor of Ascension Savings and Loan Association in the amount of $10,000.00 and the second mortgage in the amount of $10,150.56 held by Consolidation Loans, Incorporated of which Manfred Sternberg was president.
Defendant Maryland Casualty Company filed an answer denying any indebtedness and alleging, first, that plaintiff had effected a compromise with Lee Roy Frantom without their knowledge, consent or participation and that they were no longer responsible. Then in the alternative if a judgment is rendered against them in favor of plaintiff then as third party plaintiff ask for judgment against Lee Roy Frantom for whatever judgment might be rendered against it in favor of plaintiff. Maryland Casualty subsequently amended its answer by alleging that the required bond was for the amount of $10,000.00, and that evert though yearly certificates were necessary and were issued for the renewal of the *701 broker’s license the bond was a continuing one with a limit of $10,000.00 and that they had already paid claims in the amount of $5707.25 and were being sued on another claim in the amount of $1091.00 plus $500.00 as reasonable attorney’s fees, for an aggregate total of paid and unpaid claims of $7298.25, against a total liability of $10,-000.00.
Lee Roy Frantom filed an answer admitting that he had sold the three lots of Manchac camp sites to plaintiff, but denies that he received a cash amount of $6500.00 plus a note of $1500.00, but that the $6500.00 cash consideration was taken care of by the transfer by Matthews to Frantom of “Lot J” of the Subdivision of Square 32 of Good-wood place in exchange for the transfer to plaintiff of the three lots in Manchac camp site. Frantom further admitted that the property had been foreclosed on by Ascension Savings and Loan Association on the first mortgage. He answered the third party demands of Maryland Casualty Company by averring that he had been discharged in bankruptcy, and then filed a third party petition himself against the Consolidation Loans Inc. and Manfred Stern-berg alleging that in the alternative if he is indebted to either of the plaintiffs then the amount of such judgment obtained against him should be paid by the third party defendant, Consolidation Loans, Inc. and Manfred Sternberg for the reasons that the second mortgage which was originally held by Manfred Sternberg had been transferred by him to Consolidation Loans Inc., that Sternberg as president of Consolidation Loans Inc. executed an affidavit in January 1963 showing the balance on the second mortgage note to be $847.08 plus interest and costs.
He alleged that he undertook to find a buyer for a 35.91 acre tract and did find a buyer who was ready, willing and able to buy based upon the assumption of the Ascension Savings and Loan mortgage and paying the amount of $847.08 to Sternberg. He further alleged that Sternberg refused to accept the $847.08 plus interest, attorney’s fees and court costs and demanded an amount in excess of $3000.00 to pay off the second mortgage.
He further alleged that Sternberg changed the balance by changing the imputation of previous payments by him from the subject second mortgage to other unsecured loans and because of the change Frantom was unable to complete the transaction for the proposed purchaser and Ascension Savings and Loan proceeded with their foreclosure proceedings. He alleged the subject property was lost by the wrongful acts of Stern-berg and Consolidation Loans, Inc. in failing and refusing to accept the proper balance which they admitted to be due in payment of their mortgage note.
The Consolidation Loans, Inc. and Manfred Sternberg filed declinatory and dilatory exceptions to the third party petition of Lee Roy Frantom on the grounds that the third party plaintiff had not complied with the provisions of Article 1114 CCP and that he failed to comply with Article 854 CCP on the grounds that his allegations of fact were not simple, concise and direct, and that the contents of each paragraph were not limited to a single set of circumstances, and last that there was improper accumulation of actions and the misjoinder parties defendant in this third party demand for the reason that the third party defendants Consolidation Loans, Inc. and Manfred Sternberg could not both be responsible for the purported Third Party demand.
Plaintiff then filed a supplemental and amended petition joining the Consolidation Loans and Manfred Sternberg as parties defendants in the original suit, and praying for judgment against him and adopting the Articles 13 through 20, both inclusive, of the allegation made by the defendant and third party plaintiff Lee Roy Frantom previously filed against Consolidation Loans, Inc. and Manfred Sternberg.
Manfred Sternberg and Consolidation Loans Inc., third party defendants and made defendants in the main demand, filed *702 a petition in -reconvention against the demands of Matthews and Frantom and sought damages in the amount of $30,000.00 and alleged that certain demands in the third party petition and the supplemental and amended petition were slanderous in that Frantom charged Consolidation Loans Inc. and Manfred Sternberg a rate of interest “inconscionable” and further charging reconvenors with acts of fraud, dishonesty, usury and want of conscience and that reconvenors “wrongfully and maliciously put a squeeze on Frantom.”
-Matthews filed an answer to the recon-ventional demand denying each and every allegation except such as would be admitted.
Consolidation Loans Inc. and Manfred Sternberg then filed dilatory and declina-tory exceptions to the supplemental and amended petition filed by Matthews, on the grounds that there was an improper accumulation of action and misjoinder of parties defendant. They then filed peremptory' exceptions of no right and no cause of action. Frantom then filed declinatory exceptions to the petition in reconvention, based on the fact that the petition in reconvention was premature.
Matthews likewise filed a declinatory and dilatory exception to the petition in recon-vention filed by Consolidation Loans Inc. and Sternberg on the same grounds.
Sternberg and Consolidation Loans filed hn answer reserving all rights under their exceptions and answered the pleadings filed by Matthews and Lee Roy Frantom by denying all the allegations, except certain ones which were admitted. They further set up that the affidavit alleged upon in January, 1963 by Manfred Sternberg was done by reason of error of fact, error of law, error in the motive, error as to the nature and object of the contract and/or mistake and that said affidavit was void and inoperative and should be so declared.
. They further allege that Frantom authorized Sternberg and Consolidation Loans Inc. to impute the payments he made to Sternberg and Consolidation Loans on the several obligations and debts he owed to them in whatever manner deemed best suited to them, and that the affidavit showing the balance on the second mortgage note $847.08 plus interest and costs was made through error and mistake. He further alleged that Frantom had the right to take steps at the time of the foreclosure to protect himself from Matthews including the right he had to file money in the registry of the Court and obtain an adjudication as to the amount owed on the purported second mortgage note pending foreclosure. He then plead compensation set-off as to a certain other note which he held against Frantom.
Consolidation Loans Inc. and Sternberg then filed peremptory exception of prescription, on the grounds that the affidavit of January 31, 1963 only allowed thirty days for Frantom to pay the balance due of $847.08, and therefore the claim was prescribed, by the prescription of one year, inasmuch as the suit was not filed against them until May 4 and June 3, 1964.
Frantom answers the reconventional demand of Sternberg and Consolidation Loans Inc. by admitting certain paragraphs but denying those setting up the demand.
Frantom filed a third amended third party petition against Sternberg and Consolidation Loans Inc. alleging that if there is any question of compensation and set-off that they were barred by his discharge in bankruptcy. The Consolidation Loans Inc. and Sternberg then filed an exception of no right of action against the third party petition of Frantom and the petitioner Matthews as amended.
The Trial Judge overruled all exceptions. The matter was duly tried and the Lower Court rendered judgment in favor of the plaintiff Matthews and against Frantom, Maryland Casualty Company, Sternberg and Consolidation Loans Inc. individually and in solido in the sum of $8500.00 with legal interest from judicial demand until paid and all costs of this suit, and further judgment *703 against Maryland Casualty Company for additional ten per cent on the principal and interest as attorney’s fees.
Further judgment was rendered in favor of Maryland Casualty Company in the third party action against Lee Roy Frantom for the same amount of the payment by Maryland Casualty Company to the plaintiff, on the judgment for the plaintiff in the main demand up to the sum of $8500.00 with legal interest from judicial demand and Court costs.
The Court rendered further judgment in favor of Frantom in the third party action over and against Sternberg and Consolidation Loans Inc. individually and in solido in the same amount of any payment made by Frantom to Matthews on the judgment in favor of plaintiff in the main demand up to $8500.00 with interest from judicial demand and costs. The Court dismissed the reconventional demand of Sternberg and Consolidation Loans Inc. with costs.
From this judgment Maryland Casualty Company and Sternberg and Consolidation Loans Inc. have appealed to this Court.
There is not much dispute about the facts in this case as the main facts were stipulated by joint stipulation entered into and filed by Matthews, Frantom, and Maryland Casualty Company by their attorneys. The facts as agreed to by these parties were further established by direct testimony.
Consolidation Loans Inc. and Sternberg refused to enter into the stipulation and are not bound by them.
The facts show conclusively that Frantom owned said properties in Ascension Parish consisting of a 35.91 acre tract and also three improved camp sites on Bayou Man-chac. These properties were subject to two mortgages, one in favor of Ascension Savings and Loan and one in favor of Stern-berg, which was later transferred to Consolidation Loans, Inc. Frantom transferred the camp sites to Matthews as set out in the petition for a consideration of $8000.00. At that time Frantom did not advise Matthews that the lots were subject to the two mortgages and Matthews was in good faith when he purchased them.
Frantom had paid the second mortgage in favor of Sternberg down to the sum of $847.08. After the sale in which Matthews was not advised of the two mortgages, Frantom’s financial position worsened and Matthews found out that the title was clouded with the two mortgages and he then made demand upon Frantom to pay up the mortgages and to secure their cancellation or return his money.
In order to try to secure Matthews, Frantom transferred to him title to the 35.91 acres of land and issued a counter-letter which gave Frantom the right to find a buyer for the 35.91 acres with the idea of paying off the two mortgages and clearing the title of Matthews.
Frantom then attempted to find a buyer of the 35.91 acre tract and did in fact find two, Lyle E. Smith, an attorney, and Carlos Cashio, a contractor. Smith had died by the time the case was tried but Cashm testified that he was willing to purchase the property for $10,000.00.
Both Frantom and Matthews then sought to find out the balance due on the second mortgage note held by Consolidation Loans, Inc. The note originally called for 36 payments at $281.96 per month, 33 of these payments had been made by Frantom and only 3 remained.
Two statements were issued by the office of Sternberg and/or Consolidation Loans, first that the amount due was $847.08. This was later changed by Stern-berg to some $2820.80, claiming that Fran-tom in his desperation to obtain more money told him to impute the payments previously made by him on the second mortgage note to his unsecured loans so that Sternberg would in fact have security for whatever money that he might subsequently lend to Frantom.
Frantom disputes this and denied that he was ever informed until the suit was filed *704 the Consolidation Loans or Sternberg had changed his payments and imputed the same to certain unsecured loans that he had with them.
Frantom was engaged in real estate business and furnished a statutory bond each year of $10,000.00 to the defendant Maryland Casualty Company as surety. This bond is provided by the Revised Statutes 37:1447 which reads as follows: •
“A. Before any person opens, engages in, manages and conducts any real estate agency or office, or deals in real estate or rent collecting, as agent or broker, either in an office or otherwise, such person shall furnish bond with security in favor of the governor in the amount of one hundred dollars for every thousand population or fraction thereof in the parish in which the agent or broker proposed to do business. The bond shall not exceed ten thousand dollars for the benefit of any person in interest, as his interest may appear, and shall be conditioned that the agent or broker shall carry out the objects and purposes for which his agency, office or business has been established, and that the agent or broker shall honestly conduct his business and pay all damages which may result from his actions as a real estate agent or broker; provided, however, that all non-resident brokers shall furnish the ten thousand dollars maximum bond. The surety, if a personal surety, shall be a citizen in this state and shall own immovable property in the parish in which the agent or broker resides or is domiciled to the full and unencumbered value equal to the bond he may sign. The surety may be sued either in the parish of his domicile or in the parish in which the agent or broker resides or is domiciled.
B. Anyone who is injured or damaged by the agent or broker by any wrongful act done in the furtherance of such business or by any fraud or misrepresentation by the agent or broker may sue for the recovery of the damage before any court of competent jurisdiction. As amended acts 1962, number 89, § 1. ” (Emphasis ours.)
This bond was renewed and a new certificate issued for each year thereafter in the amount of $10,000.00 up .until same was cancelled by the Maryland Casualty Company.
Since the Maryland Casualty Company was an original defendant we will take up their contentions first. Maryland Casualty’s first defense is based on the fact that Frantom was engaged in the real estate business, but that the property which he sold to Matthews was not property which he sold for another, but his own property which he transferred himself. They cited authority in the act (LSA 37:1459) for this. However, they admit that the case of Buras v. Fidelity and Deposit Co., 197 La. 378, 1 So.2d 552 is against them. They point out that this case was decided in 1941 on legislative intent by writing in a comma after the word “Representative” in the source of Statute Act 236 of 1920. He contends since that time that the Louisiana Revised Statute has been adopted and that the comma is still missing. He cites no additional authority on it nor have we been able to find any further cases. This is a decision of the Supreme Court of Louisiana based on the wording of a statute which was copied verbatim into the new Revised Statute we feel that we should follow this decision of the Supreme Court. There is no question but what Buras v. Fidelity and Deposit Company, supra, held the real estate broker who sold land on his own account and was unable to deliver good title, although he had received the full payment for the property sold that the statutory brokers bond was liable for whatever damages the purchaser might suffer.
*705 His next contention is that a bond of $10,000.00 covered all damages that anyone might suffer in dealing with Frantom, and that they had already paid out some $5702.25, leaving the maximum exposure left of $4297.75. However, these losses were paid in the period March 4 through March 6, 1963 for claims which arose in November and December 1962.
Plaintiff’s loss occurred when the foreclosure by the Ascension Savings and Loan Association took place. The Sheriff’s sale was held on November 2, 1963, the deed was dated November 6, 1963 and filed November 7, 1963. When a new bond was furnished each year it was for the full amount required under the statute. To hold otherwise would defeat the purpose of the real estate brokers bond because if a real estate brokers bond was only good for all the damages that different people might suffer by reason of a fraud of the broker, even though these frauds happen in different years would obviously not comply with the Act by maintaining a bond each year in the full amount of $10,000.00. We believe that the Act set the bond to cover damages suffered in any one year. We, therefore, feel that this contention was correctly decided against the Maryland Casualty Company.
 The next contention of Maryland Casualty is that they should not be compelled to pay the attorneys fees of $500.00 which was paid to plaintiff’s attorney in attempting to adjust and settle the matter prior to the time suit was filed. The Casualty Company contends that there is no provision in the statute allowing any such fee. To this we believe that they are correct and that this item of damages for $500.00 was illegally awarded, and will have to be stricken from the original judgment. As regards the ten per cent attorneys fees we believe that this is definitely provided by the statute, and this item will remain in the judgment.
This brings us to the claims in the third party petition against Sternberg and Consolidation Loans Inc. and their reconven-tional demand. In this connection we quote from the written reasons of the Trial Judge which we believe correctly sets forth the facts and conclusions on this phase of the suit.
“Sternberg had no legal right to cancel the credits on that note and impute them to another unsecured note. The $1973.72 which Sternberg took off this second mortgage note after they had been applied was exactly seven installments of $281.96 each, one each month dating back to May, 1962. Almost a year had passed when that was done.
It seems to me that Frantom and Matthews were wholly justified in using the language they did in their pleadings to denominate the shenanigans employed by Sternberg for his corporation in the premises.
The plan to transfer title to the 35.91 acres to Matthews, to be held in Matthews’ name temporarily, was not a transfer of ownership. It was a perfectly legal and reasonable arrangement and would have been entirely successful if Sternberg had not welshed on his written declaration of the amount due on the second mortgage note.
I deem further discussion unnecessary except to say that if Sternberg had not unlawfully changed his records to make the claim for much more than was owing on that note and had not refused to agree to accept the offer to pay the correct amount of $847.08 with interest, attorney’s fees and costs, the whole matter would have been settled. Matthews would have had no loss, the second mortgage note would have been paid in full and this suit never would have been filed.
The actions of Sternberg in this matter were illegal, in bad faith, and, as the circumstances indicate, with corrupt motive and intent, all of which makes him personally liable with the corporation for the resulting loss.”
*706 It seems to us that Sternberg realizing the precarious condition of his unsecured loans which he had with Frantom and with an effort to salvage as much as he could, attempted to impute the payments made on the second mortgage noteto these unsecured loans. Frantom denied that he authorized him to do this and denied receiving any notice that said payments had been changed and imputed to the unsecured loans.
There is no question but what a debtor has a right to impute his payments to the obligation which is the most onerous. In addition a debtor has a right to declare when he makes a payment what debts he means to discharge. See LSA-C.C. 2163 through 2166, both inclusive.
In this case Frantom had made 33 monthly payments which were received by Sternbei'g and Consolidation Loans Inc. and credited to the second mortgage note involved herein in the original amount of $10,150.56. It was only after Frantom became so involved and was being pressed by some of his deals that Sternberg changed the imputation of payments to unsecured loans, without the consent of Frantom and without Frantom’s knowledge that he had done so. We believe this clearly was done in violation of the Civil Code Article 2163-2166, and such change is null and void.
Appellants Sternberg and Consolidation Loans Inc. further agree that both Sternberg and Consolidation Loans could not both be responsible in damages. In this connection the Trial Judge found that Consolidation Loans Inc. was Sternberg’s alter ego. All the illegal acts done by the Corporation were done by Sternberg in his capacity of president.
In the case of Grundman et al. v. Barataria Development Corporation, La.App., 128 So.2d 717 the president of defendant corporation sold mineral productions by untruthful representations, amounting to a fraud. The president attempted to avoid liability for the claims for the return of the purchase money on the grounds that he was acting for the corporation. The corporation was described as “a mere shell” under the complete control of the president and one other. The president of the corporation was held liable. This disposes of this issue.
For the foregoing reasons it is ordered that the original judgment of $8500.00 against Frantom and Maryland Casualty Company be amended by reducing the claim to $8000.00, striking out the award of $500.-00 attorney’s fees, but awarding ten per cent, addition to the $8000.00 as attorney’s fees and all costs, and all third party judgment be amended accordingly, and as amended, and in all other respects the judgment of the Lower Court is affirmed.
Amended and affirmed.