540 So.2d 974 (1989)
STATE of Louisiana, Appellee,
v.
Ernest Earl ANDERSON, Appellant.
No. 20151-KA.
Court of Appeal of Louisiana, Second Circuit.
February 22, 1989.
Writ Denied June 2, 1989.
*975 Jones & Johnson by Jerry L. Jones, Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., William B. Faust, III, Asst. Atty. Gen., Baton Rouge, James A. Norris, Jr., Dist. Atty., Monroe, Charles Brumfield, Asst. Dist. Atty., Bastrop, for appellee.
Before HALL, FRED W. JONES, Jr., and NORRIS, JJ.
HALL, Chief Judge.
The defendant, Ernest Earl Anderson, age 61, was charged with distribution of material harmful to a minor in violation of LSA-R.S. 14:91.11 A. The defendant waived a trial by a jury, was tried and convicted. He was sentenced to pay a fine of $500 and court costs or 60 days in jail. The defendant has appealed and argues that his actions in privately loaning a pornographic video tape to a minor were not proscribed by LSA-R.S. 14:91.11.

I.
On June 10, 1987, the defendant loaned a video tape to Scott Floyd, a 16-year old unmarried minor. It was stipulated at trial that the tape contained sexually explicit material. The minor learned of the existence of the tape through the defendant's stepson. On the date in question, the minor approached the defendant in the defendant's home and asked to borrow the tape. The defendant admits loaning the tape to the minor, but he claims he did not know the boy's age at the time. The minor's mother found the tape in her son's possession and filed a complaint with the sheriff's office.

II.
The question presented by this appeal is whether the act of loaning a sexually explicit video tape to a minor is a crime under LSA-R.S. 14:91.11 where the transaction does not take place at a newsstand or other commercial establishment and there is no commercial gain to the lender.
At the time of the commission of the offense, prior to the 1988 amendment of the statute by Act No. 782 of 1988, LSA-R. S. 14:91.11 provided in part:
A. The unlawful sale, exhibition or distribution of material harmful to minors is the intentional sale, allocation, distribution, advertisement, dissemination, exhibition or display of material harmful to minors, to any unmarried person under the age of seventeen years, or the possession of material harmful to minors with the intent to sell, allocate, advertise, disseminate, exhibit or display such material to any unmarried person under the age of seventeen years, at a newsstand or any other commercial establishment which is open to persons under the age of seventeen years.
"Material harmful to minors" is defined as any paper, magazine, book, newspaper, periodical, pamphlet, composition, publication, photograph, drawing, picture, poster, motion picture film, figure, phonograph record, wire or tape recording or other similar tangible work or thing which exploits, is devoted to or principally consist of, descriptions or depictions of illicit sex or sexual immorality for commercial gain, and when the trier of fact determines that the average person applying contemporary community standards would find that the work or thing is presented in a manner to provoke or arouse lust, passion or perversion or exploits sex.

III.
The defendant argues that for his conduct to be considered criminal under LSA-R.S. 14:91.11 the distribution of the tape must have been for commercial gain. The state argues that the overriding interest in this matter is not the commercial nature of the distribution but rather the need of the state to protect children. The state further argues that the "for commercial gain" language found in the definition of materials harmful to minors was an attempt by the *976 legislature to limit the applicability of LSA-R.S. 14:91.11 to materials that had been originally produced or manufactured for commercial gain.
The trial court found the phrase "for commercial gain" did not limit the application of the statute only to commercial establishments or direct commercial transactions. The trial court found the legislature's focus was on commercially manufactured papers, magazines, video tapes and other material as distinguished from a home movie or other amateur production or material produced for educational purposes. The trial court found the phrase "for commercial gain" clearly referred to the material involved and not the transaction or motive for the act of sale, exhibition or distribution. Accordingly, the trial court found the actions of the defendant were proscribed by LSA-R.S. 14:91.11.
We find the trial court's determination that the phrase "for commercial gain" refers to creation or production of the material involved and not to the nature of the transaction is correct. The movies contained on the video tape in question are clearly commercially produced and as such are covered by this statute. There is no requirement that the lender or distributor of the material receive commercial gain.

IV.
The defendant further argues that a simple reading of the statute indicates the statute applies only to commercial establishments distributing "material harmful to minors" for commercial gain. The defendant maintains that the phrase "at a newsstand or any other commercial establishment" at the end of the first paragraph of LSA-R.S. 14:91.11 A modifies not only the immediately preceding clause making it unlawful to possess material harmful to minors with the intent to sell, etc., but also the first clause of the paragraph making it unlawful to actually sell or distribute material harmful to minors.
Since 1966 the legislature has made it a crime for anyone over seventeen to sell, exhibit or distribute obscene material to persons under seventeen without reference to commercial establishments or gain. The statute was amended in 1974 by Act 275. The primary purpose of Act 275 was to more clearly define the proscribed material as required by Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), and State v. Shreveport News Agency, Inc., 287 So.2d 464 (La.1973). See and compare State v. Peacock, 461 So.2d 1040 (La.1984). Another apparent purpose was to broaden the scope of unlawful activity as related to newsstands and commercial establishments to include possession with intent to sell, etc. and to include inviting or permitting unmarried persons under seventeen to be in any commercial establishment that exhibits or displays such material. Section 14:91.11 A and B. The amendment does not indicate any intent on the part of the legislature to abolish the long-standing prohibition against distribution of pornographic material to minors by persons generally, or to limit the prohibition to distribution at newsstands or commercial establishments.
The statute as amended makes it illegal for (1) any person to sell, etc. harmful material to minors, and (2) any person to possess material harmful to minors with the intent to sell, etc. to minors at a newsstand or commercial establishment which is open to persons under the age of seventeen years. This interpretation effects the object of the law and gives to the statute's provisions a genuine construction, according to the fair import of its words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision. LSA-R.S. 14:3.
There is a rule of statutory interpretation that the presence of a comma separating a modifying clause in a statute from the clause immediately preceding is an indication that the modifying clause was intended to modify all the preceding clauses and not just the last antecedent one. However, the general rule is that relative and qualifying clauses are to be applied to the words or phrase immediately preceding and are not to be construed as extending to or *977 including others more remote. See 82 C.J. S. Statutes § 334, at 670, 671 (1953).
An inartistically placed comma does not require a construction contrary to the legislative intent and plain meaning of a statute. Punctuation cannot control a statute's construction against the manifest intent of the legislature, and the court will punctuate or disregard punctuation to ascertain and give effect to real intent. Buras v. Fidelity & Deposit Co. of Maryland, 197 La. 378, 1 So.2d 552 (1941).
In State v. Peacock, supra, the Louisiana Supreme Court was called upon to interpret the obscenity statute, LSA-R.S. 14:106, as amended by Act 274 of 1974 (a companion act to Act 275 amending LSA-R.S. 14:91.11). The statute as amended was inartistically written and the court acknowledged that to interpret the statute literally was difficult. The court held that penal statutes must be strictly construed against the state but, nevertheless, must be given a genuine construction according to the fair import of their words in connection with the context and with reference to the purpose of the provision in accordance with LSA-R.S. 14:3. The court noted that the 1974 amendment was adopted in response to Miller v. California, supra, and State v. Shreveport News Agency, Inc., supra, and its purpose was to more specifically define obscene material. Referring to the purpose of the statute to prohibit distribution of works depicting sexual acts described in the statute and to the long history of prohibition against the distribution of obscene material in this state, the court refused to apply limiting language of the amendment as a requirement or element of the crime even though, grammatically, the statute could be read otherwise. The concurring opinion noted that the majority opinion's genuine and reasonable construction of the statute did not create a crime for which the statute did not provide.
We find that LSA-R.S. 14:91.11 prohibits the act of loaning a sexually explicit video tape to an unmarried minor even though the transaction did not take place at a commercial establishment and was not for the commercial gain of the lender. Accordingly, defendant's conviction and sentence are affirmed.
AFFIRMED.