617 So.2d 69 (1993)
MEDIVISION, INC. and Louisiana Eye Center of New Orleans, P.C., Plaintiffs-Appellants,
v.
Bruce A. GERMER, M.D., Defendant-Appellee.
No. 92-CA-1755.
Court of Appeal of Louisiana, Fourth Circuit.
March 30, 1993.
Writ Denied June 4, 1993.
*70 William E. Wright, Jr., Judy L. Burnthorn and L. Paul Hood, Jr., Deutsch, Kerrigan & Stiles, New Orleans, for plaintiffs-appellants Medivision, Inc. and Louisiana Eye Center of New Orleans, P.C.
L. Havard Scott, III, G. Phillip Shuler and Douglas L. Grundmeyer, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, for defendant-appellee Bruce A. Germer, M.D.
KLEES, BYRNES and LOBRANO, JJ.
KLEES, Judge.
Plaintiffs, Medivision, Inc. and Louisiana Eye Center of New Orleans (collectively "Medivision"), appeal the district court's refusal to enjoin the defendant, Dr. Bruce A. Germer, from breaching the non-competition agreement contained in their employment contract. After reviewing the law and record, we affirm the district court's denial of injunctive relief based upon the findings that the non-competition agreement is invalid and unenforceable under Louisiana law.
On April 12, 1991, Dr. Germer entered a "Medical Services Agreement" ("Agreement") with Medivision Eye Center, a Louisiana professional corporation authorized to practice medicine in this state, and Medivision, Inc., a Delaware corporation that owned Medivision Eye Center and other similar centers nation-wide. Under the terms of the Agreement, Dr. Germer was prohibited from working for or promoting Medivision's competitors while employed by Medivision. Additionally, for one year after termination of the employment contract, Dr. Germer is barred from providing ophthalmological services within ten miles of any office of Medivision existing during the term of the Agreement.
After Dr. Germer was employed, Medivision Eye Center's parent corporation, Medivision, Inc., was acquired by Medical Care International. This acquisition enabled Dr. Jeffrey G. Straus, an employee of Medivision Eye Center, to purchase 100% of Medivision Eye Center's stock from Medivision, Inc. and Medical Care International in September of 1991. The practice's name was changed to the Louisiana Eye Center of New Orleans, d/b/a Straus-Azar Medical, Surgical & Laser Eye Center (Straus-Azar), and continued to operate from Medivision's two office locations on 3434 Houma Boulevard, and 120 Meadowcrest.
The Agreement provided that Dr. Germer was required to give Medivision six months notice for premature termination of employment. On June 1, 1992, Dr. Germer submitted a written notice of his intent to terminate his employment with Medivision in six months in order to join Dr. Stephen F. Brint's practice at the Eye Surgery Center of Louisiana. Soon after notice was given, the circumstances leading to this suit arose when Dr. Germer began promoting the Eye Surgery Center of Louisiana by allowing the use of his photograph and biographical information in promotional publications including newspaper advertisements and pamphlets that were disseminated to referring physicians and potential patients.
After discovering these and other actions taken by Dr. Germer, Medivision informed Dr. Germer on two occasions that these promotional activities constituted a breach of the Medical Services Agreement which was binding on the parties until December 1, 1992. Specifically, Medivision referred to the section of the Agreement that requires Dr. Germer to "cooperate with Medivision in maximizing the level of optometric patient referrals to the Center: ... promoting the Center's patient care services to area optometrists at every opportunity." When Dr. Germer failed to observe these warnings, Medivision filed a petition for injunctive relief to prevent Dr. Germer from promoting, developing, and working for its competitor, the Eye Surgery Center of Louisiana. Dr. Germer answered Medivision's petition and filed a reconventional demand requesting that the non-competition *71 agreement which prevented him from practicing within ten miles of a Medivision office be declared null and unenforceable because it does not comply with the statutory requirements governing non-competition agreements.
Before the end of six months, on July 1, 1992, Dr. Germer walked out of Medivision and left written notice stating that effectively immediately, his association with Medivision was terminated. Dr. Germer then began providing ophthalmological services for the Eye Surgery Center of Louisiana in Bogalusa, Louisiana, and in New Orleans East at 5640 Read Road. In response, Medivision filed a supplemental and amending petition requesting that Dr. Germer be enjoined from providing ophthalmological services at 5640 Read Road because it is within ten miles of Medivision's offices located at 3501 Holiday Drive in Algiers and at 9661 Lake Forest Boulevard in New Orleans East.
On July 17, 1992, the district court denied Medivision's petition on the grounds that the non-competition agreement was invalid under R.S.La. 23:921. From this judgment Medivision perfects its appeal seeking that this Court reverse the district court's judgment and enter a mandatory injunction prohibiting Dr. Germer from providing ophthalmological services at the Eye Surgery Center's Read Road location.
After the appeal was lodged, Dr. Germer filed an exception of no right of action in this Court alleging that the plaintiffs have no legal right to enforce the non-competition provision contained in the Medical Services Agreement. Dr. Germer bases this exception on the grounds that Medivision Eye Center of New Orleans, the original party to the Agreement, is no longer in existence because 100% of its stock was transferred to Dr. Straus. Dr. Germer argues that in order for the Medical Services Agreement to bind Dr. Germer and the Straus-Azar corporation, a valid assignment of the Agreement between Medivision Eye Center and Straus-Azar was necessary.
This argument fails to recognize that a corporation, as a juridical entity, is distinct from its owners and has a separate existence regardless of whether its shares are transferred. Consequently, the sale of Medivision Eye Center's stock to Dr. Straus does not affect the corporation's existing contractual rights, and therefore, the Medical Services Agreement is unaffected by the sale. Moreover, Dr. Germer continued working under the terms of the Agreement for approximately ten months after Dr. Straus had purchased 100% of Medivision Eye Center's stock. For the foregoing reasons, we find that the plaintiffs have a legal right to enforce the terms of the Medical Services Agreement and deny Dr. Germer's exception of no right of action.
The sole issue on appeal is whether the non-competition provision contained in the Medical Services Agreement is valid and binding between the parties under Louisiana law.
Louisiana has consistently had a strong public policy against an employment contract which prohibits an employee from competing with a former employer. Neeb-Kearney & Co., Inc. v. Rellstab, 593 So.2d 741, 747 (La.App. 4th Cir.1992), writ denied, 594 So.2d 1321 (La.1992). This policy is reflected in the statutory language of La.R.S. 23:921:
A. Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade or business of any kind, except as provided in this Section, shall be null and void.
One of the exceptions in La.R.S. 23:921 provides:
C. A person who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years.
*72 The Second Circuit pointed out that in order to fit into one of the exceptions to non-competition agreements, the contract must strictly comply with the requirements contained in the statute. See Comet Industries, Inc. v. Lawrence, 600 So.2d 85 (La.App. 2d Cir.1992), writ denied, 604 So.2d 1002 (La.1992).
In the instant case, the non-competition agreement attempts to prevent Dr. Germer, for one year after employment terminates, from "providing ophthalmological services at any location within ten miles of any office of the Center existing during the term of this agreement." In the preamble to the Medical Service Agreement, the term "Center" is defined as "an eye care center currently located at 3434 Houma Boulevard, Metairie, Louisiana (collectively with the Meadowcrest Office [located in Gretna, Louisiana]) and any future additional offices in the Greater New Orleans Area." In his reasons for judgment, the trial judge found that this agreement was unenforceable under La.R.S. 23:921 on the following grounds:
The contract here proscribes competition within ten miles of offices not established at the time the contract was executed. The employee could not determine at the time of execution the limits of the prohibition. The contract thus contains a potestative element. Furthermore, and more significantly, in failing to "specify" the proscribed areas, the contract violates Section 921.
Medivision argues that the non-competition agreement at issue does not fail to "specify the proscribed areas" under La. R.S. 23:921 because the territorial scope is limited to the "greater New Orleans area." However, under the plain language of the statute, a non-competition agreement must specify the "parish or parishes, municipality or municipalities, or parts thereof." Medivision contends that the term "greater New Orleans area" is commonly used in Louisiana statutes and jurisprudence. However, in the context of the non-competition agreement at issue, the term creates uncertainty as to the extent of the territorial limitations placed upon Dr. Germer after his employment with Medivision.
We find that this uncertainty is further compounded by the fact that the agreement failed to adequately define what is meant by an "office of the Center." Dr. Germer alleges that during the term of his employment, Medivision's only two regular places of businesses listed on Medivision's letterhead were located at 3434 Houma Boulevard in Metairie, and 120 Meadowcrest in Gretna. Nevertheless, Medivision argues that two additional locations at 3501 Holiday Drive in Algiers and 9661 Lake Forest Boulevard in New Orleans East constitute "offices of the Center" under the non-competition agreement, and therefore, Dr. Germer is prohibited from practicing at the Eye Surgery Center's location in New Orleans East on Read Road. From our review of the record, affidavits, and depositions, we find it questionable to consider these locations "offices of the Center."
The Holiday Drive location in Algiers is actually the office space of Dr. David Heitmier, an ophthalmologist. Dr. Heitmier deposed that in order to service the retinal needs of his patients, he negotiated an agreement with Medivision on January 23, 1992 whereby Dr. Germer would come to his office on Holiday Drive to see patients there once a month for one-half a day. Similarly, the location at 9661 Lake Forest Boulevard was leased to a Dr. David Newsome, who was previously employed by Dr. Brint's Eye Surgery Center of Louisiana. Dr. Newsome and Medivision had an agreement whereby Medivision would use his office to perform retinal screenings and treatments once a week. Furthermore, the Lake Forest office was not open on July 1, 1992 when Dr. Germer terminated his association with Medivision. Medivision alleges that Dr. Germer's motivation in prematurely terminating his employment was to manipulate the scope of the non-competition clause so the Lake Forest office would be excluded and he could practice with the Eye Surgery Center of Louisiana in New Orleans East without violating the non-competition agreement. On the other hand, Dr. Germer alleges that the reason that he left abruptly was because Medivision's *73 Medical Director was sexually harassing Medivision employees.
Apparent from the record, the phrases "office of the Center," and the "greater New Orleans area" as applied to Medivisions' places of business are vague and ambiguous. Because of the strong public policy against non-competition agreements, La.R.S. 23:921 requires clarity in the scope of territorial limitations. As evidenced in the instant case, the lack of specific territorial limitations in a non-competition agreement creates the opportunity for the employee to circumvent the limitations, and for the employer to extend the limitations.
For the foregoing reasons, we find that the non-competition clause at issue fails to meet the requirements of La.R.S. 23:921 because it does not specify the "limits of the prohibition." Accordingly, the judgment of the district court is affirmed.
AFFIRMED.