# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 04-1172

**ROBERT BUTCH TROST, SR., D/B/A LAKE AREA INSULATION, DRYWALL AND PAINTING**

**VERSUS**

**DONALD O'CONNOR**

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 03-3741
HONORABLE J. DAVID PAINTER, DISTRICT JUDGE

**********

**MARC T. AMY**
**JUDGE**

**********

Court composed of John D. Saunders, Marc T. Amy, and Michael G. Sullivan, Judges.

**AFFIRMED.**

**Oliver Schrumpf**
**Schrumpf & Schrumpf**
**3801 Maplewood Drive**
**Sulphur, LA   70663**
**(337) 625-9077**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Robert Butch Trost, Sr.**

**Timothy O'Dowd**
**921 Ryan Street, Suite D**
**Lake Charles, LA   70601**
**(337) 310-2304**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Donald O'Connor**

AMY, Judge.

The plaintiff filed suit seeking an injunction, enforcing a noncompetition agreement it contends was entered into with the defendant. The trial court granted the permanent injunction. The defendant appeals, asserting that he entered into a noncompetition agreement with the plaintiff, acting individually, not with the plaintiff insofar as it is a corporation. For the following reasons, we affirm.

**Factual and Procedural Background**

This case involves the validity of a noncompetition agreement. At issue is a July 2001 noncompetition agreement entered into between the defendant, Donald O'Connor, and the business for which he worked as an independent contractor, Lake Area Insulation, Drywall and Painting. Lake Area Insulation, Drywall and Painting is operated by Robert Butch Trost, Sr. Subsequent to the signing of the noncompetition agreement, Mr. O'Connor left his position and began performing similar job duties for his own business.

This matter was instituted in July 2003, when Robert Butch Trost, Sr. d/b/a Lake Area Insulation, Drywall and Painting, filed suit, seeking a temporary restraining order, a preliminary injunction, and ultimately a permanent injunction preventing Mr. O'Connor from engaging in a business similar to that of Lake Area Insulation, Drywall and Painting.

The trial court granted an August 2003 preliminary injunction in favor of Robert Butch Trost, Sr. d/b/a Lake Area Insulation, Drywall and Painting, enjoining and restraining Mr. O'Connor "from carrying on or engaging in his own competing business and/or from soliciting customers" of Robert Trost, d/b/a Lake Area Insulation, Drywall and Painting, for the two-year period subsequent to July 7, 2003 and within a seventy-five-mile radius of Lake Charles. The record indicates that the

preliminary injunction was entered into pursuant to stipulation of the parties.[1]  At the subsequent hearing on the permanent injunction, Mr. O'Connor questioned the validity of the stipulation, asserting he did not authorize the attorney to enter into the stipulation.

Subsequently, in December 2003, the petition was amended to add as plaintiff a company in which Mr. Trost is the sole shareholder, Lake Area Supply, Inc. d/b/a Lake Area Insulation, Drywall and Painting.[2]  Mr. O'Connor responded to the amended petition with an exception, wherein he asserted that Lake Area Supply, Inc., lacks privity to pursue the injunction.  The identification of the party with whom Mr. O'Connor entered into the contract is at the heart of this proceeding.

A February 2004 hearing was held concerning the issuance of a permanent injunction.  Primarily at issue was the identification of the party with whom Mr. O'Connor had entered into the noncompetition agreement.  Mr. O'Connor asserted that he entered into the agreement with Mr. Trost only insofar as he did business as Lake Area Insulation, Drywall and Painting and that no such agreement existed with Lake Area Supply, Inc. d/b/a Lake Area Insulation, Drywall and Painting.  Mr. O'Connor explained that, in his opinion, Mr. Trost's personal business and that of Lake Area Supply, Inc. were distinct entities.  Mr. Trost asserted that Lake Area Supply, Inc. preexisted the signing of the noncompetition agreement and that the agreement, which was signed with Lake Area Insulation, Drywall and Painting, was effective, as this was a business name of Lake Area Supply, Inc.

---

[1]The record also contains indication that, in subsequent proceedings, Mr. O'Connor was found to be in contempt of court for violation of the preliminary injunction.  A fine and term of imprisonment were imposed.  Those proceedings are not at issue in this appeal.

[2]The Supplemental and Amending Petition also named an additional defendant, who was alleged to have violated a noncompetition agreement.  The trial court found in favor of this defendant.  Thus, additional facts and proceedings related to that defendant are not before the court.

The trial court granted the permanent injunction, providing the following reasons for ruling:

> The Court is satisfied that DONALD O'CONNOR who was in trouble for misapplication of funds would have entered into any agreement that MR. TROST asked him to sign and whether or not it had been with ROBERT BUSH [sic] TROST, SR. individually, d/b/a LAKE AREA INSULATION, DRYWALL AND PAINTING, or LAKE AREA SUPPLY, INC., d/b/a LAKE AREA INSULATION AND DRYWALL AND PAINTING or someone else. MR. O'CONNOR knew that he was not to compete with MR. TROST and not to take his business. The name of the entity is irrelevant.
>
> MR. O'CONNOR was not credible when he said the move to a competing business made a difference after the name change by TROST. He only came up with this defense after he changed lawyers. MR. O'CONNOR said that he did not approve is [sic] his lawyer entering into an agreement which granted an injunction. Other than MR. O'CONNOR's "self serving" testimony, there is nothing from his former lawyer to indicate whether or not there was approval before entering into the injunction.
>
> The Court feels that the injunction against MR. O'CONNOR should be maintained. The stipulation of counsel leaving damages open for another day.

The judgment memorializing the above reasons provided that the preliminary injunction is "hereby upheld, maintained, and made permanent in favor of plaintiffs Robert Butch Trost, Sr., and Lake Area Supply, Inc., d/b/a Lake Area Insulation, Drywall and Painting." The trial court specifically retained jurisdiction to hear any remaining damages issues.

Mr. O'Connor appeals, arguing that: 1) the trial court erred in enforcing the noncompetition agreement pursuant to La.R.S. 23:921 insofar as it was granted in favor of Lake Area Supply, Inc., as there was no written contract between him and Lake Area Supply, Inc., in which he is identified as an independent contractor; 2) the trial court erred in enforcing the noncompetition agreement in favor of Mr. Trost insofar as Mr. Trost testified that the agreement was in favor of Lake Area Supply, Inc. and not him personally; and 3) the trial court erred in failing to consider prior

3

admissions of Mr. Trost as judicial confessions which would bar enforcement of the noncompetition agreement.

**Discussion**

*Identity of Parties*

Mr. O'Connor's argument in his brief to this court, as it did below, focuses upon his contention that he entered into a contract not to compete with Mr. Trost, only. Mr. O'Connor contends that, insofar as Mr. Trost testified that he no longer conducts business individually, but only does so through his corporation, Lake Area Supply, Inc., the agreement is ineffective. Mr. O'Connor alternatively argues that evidence is lacking that he entered into either an independent contractor relationship or a noncompetition agreement with Lake Area Supply, Inc. In either event, Mr. O'Connor contends, the noncompetition agreement is ineffective. In making his argument, Mr. O'Connor contests the trial court's statement that "[t]he name of the entity is irrelevant," and argues that the name of the identity of the contracting business is fundamental to the agreement so that it is discernable against whom he can longer compete.

La.R.S. 23:921 provides the statutory guidelines pertaining to a noncompetition agreement, indicating, in part:

> A. (1) Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void.
>
> (2) The provisions of every employment contract or agreement, or provisions thereof, by which any foreign or domestic employer or any other person or entity includes a choice of forum clause or choice of law clause in an employee's contract of employment or collective bargaining agreement, or attempts to enforce either a choice of forum clause or choice of law clause in any civil or administrative action involving an employee, shall be null and void except where the choice of forum clause or choice of law clause is expressly, knowingly, and voluntarily

4

agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action.

. . . .

C.   Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment. An independent contractor, whose work is performed pursuant to a written contract, may enter into an agreement to refrain from carrying on or engaging in a business similar to the business of the person with whom the independent contractor has contracted, on the same basis as if the independent contractor were an employee, for a period not to exceed two years from the date of the last work performed under the written contract.

In *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 00-1695, p. 5 (La. 6/29/01), 808 So.2d 294, 298, the Louisiana Supreme Court explained that the restrictions on noncompetition agreements contained within La.R.S. 23:921 are "based upon an underlying state desire to prevent an individual from contractually depriving himself of the ability to support himself and consequently becoming a public burden." Furthermore, "[b]ecause such covenants are in derogation of the common right, they must be strictly construed against the party seeking their enforcement." *Id.*

The question before the court was framed as whether Mr. O'Connor entered into the noncompetition agreement with Mr. Trost or Lake Area Supply, Inc. Reference to the agreement indicates that neither name was contained on the contract. Rather, the agreement listed "Lake Area Insulation, Drywall & Painting" as the business with whom Mr. O'Connor agreed not to compete.

Entitled "Independent Contractor Agreement and Covenant Not to Compete," the agreement provides:

I, Donald O'Connor, specifically contract with LAKE AREA INSULATION, DRYWALL, & PAINTING to provide my skill,

5

experience, knowledge and finished product of drywall installation, insulation, painting, and related jobs as provided to me by LAKE AREA INSULATION, DRYWALL, & PAINTING, and declare that I am an independent contractor and not the employee of LAKE AREA INSULATION, DRYWALL, & PAINTING, and specifically acknowledge that fact and relieve LAKE AREA INSULATION, DRYWALL, & PAINTING, from any and all of the following obligations:

. . . .

I, the undersigned, agree to be under the control of LAKE AREA INSULATION, DRYWALL, & PAINTING, as far as the results of my work and not as to the means, and agree to payment on a per job basis and agree to apply my skill as a [d]rywall installer, estimator, insulator and painter and related activities, for the time period required by LAKE AREA INSULATION, DRYWALL, & PAINTING to each job.

I, the undersigned, further declare that I have been advised and am aware of the Workers' Compensation statues [sic] of the State of Louisiana, particularly R.S. 23:1021, et. seq., and acknowledge that I am not the employee of LAKE AREA INSULATION, DRYWALL, & PAINTING, but an independent contractor, and specifically waive any protection of the Workers' Compensation statute of the State of Louisiana.

I further agree that I will refrain from carrying on or engaging in the business of drywall installation, estimating, insulation, painting or related activities or from soliciting customers of LAKE AREA INSULATION, DRYWALL, & PAINTING within a 75 mile radius of Lake Charles, Louisiana, and to include Calcasieu Parish, Allen Parish, Beauregard Parish, and Cameron Parish, Louisiana, within two years from termination date of this contract with LAKE AREA INSULATION, DRYWALL, & PAINTING.

I further agree and understand that if I violate any portion of this agreement, that I will pay to LAKE AREA INSULATION, DRYWALL, & PAINTING all damages sustained by them and any lost profit for which they have been deprived by my failure to comply with this agreement.

Additionally, I agree that a Court may enjoin me from soliciting, engaging in a business similar to that of LAKE AREA INSULATION, DRYWALL, & PAINTING, or providing the names or amounts of bids of any of the clients of LAKE AREA INSULATION, DRYWALL, & PAINTING, in accordance with this agreement.

I further agree to pay all legal costs, reasonable attorney's fees, and court costs for the collection of any sums which may become due because of my failure to adhere to this contract. I further agree to pay

a sum of liquidated damages as a penalty for violating this contract of the sum of $100.00 per day for every day in which I violate the terms of this contract.

The consideration for this contract is the salary or payment I receive from LAKE AREA INSULATION, DRYWALL, & PAINTING for the work which I do for the company.

Signed in Sulphur, Louisiana, on this 3 day of July, 2001.

Donald O'Connor
INDEPENDENT CONTRACTOR

The above contract is clear that Mr. O'Connor agreed to not compete with Lake Area Insulation, Drywall and Painting. At alternate times, that business arguably operated under either Mr. Trost, individually, or under the corporation of which he is the sole shareholder, Lake Area Services, Inc. It is clear that, under either entity, Mr. O'Connor's services as an independent contractor remained the same and that those services were rendered to the entity doing business as Lake Area Insulation, Drywall and Painting. It seems that it is this consistency of business and the apparentness that the business was that of Mr. Trost, individually or through his solely owned corporation, with which the trial court was concerned in stating: "MR. O'CONNOR knew that he was not to compete with MR. TROST and not to take his business. The name of the entity is irrelevant." Given the evidence in the record, this determination was not in error.

In short, the evidence presented at trial establishes that Mr. O'Connor entered into a written contract, agreeing to act as an independent contractor, doing so for the business known as Lake Area Insulation, Drywall and Painting; that he further agreed not to compete with that entity as delineated in the noncompetition agreement; and that after he ceased performing work with Lake Area Insulation, Drywall and

7

Painting, he engaged in business which was identified as violative of an agreement.[3] As the requirements of La.R.S. 23:921(C) insofar as they relate to this particular case have been met, the trial court did not err in enforcing the agreement.

We note that, at all times relevant to these proceedings, testimony indicates that Lake Area Insulation, Drywall and Painting was operated either by Mr. Trost, individually, or by his solely held corporation, Lake Area Supply, Inc. It is apparent that by 2002, the accounting practices of the entities became more standardized and that Lake Area Supply, Inc. took over operation of Lake Area Insulation, Drywall and Painting. According to Mr. Trost's brief, Lake Area Supply, Inc., continued to operate Lake Area Insulation, Drywall and Painting as of the time of the hearing. The trial court's reasons indicate that it determined that the party seeking to enforce the agreement was carrying on the same business as described in the noncompetition agreement.

Mr. O'Connor's assignments of error regarding the validity of the noncompetition agreement and the applicable burden of proof lack merit.

*Judicial Confessions*

Finally, Mr. O'Connor contends that the trial court erred in permitting Mr. Trost to assert at one point in the case's history that the noncompetition agreement was in his personal favor and at the time of trial argue that the noncompetition agreement was entered into with Lake Area Supply, Inc. This change in the approach

---

[3]The following stipulation was entered by counsel for Mr. O'Connor and recognized by the trial court:

> To shorten the matter we will stipulate that there was subsequent to leaving his employment in July of 2003, Mr. O'Connor did compete, as that phrase is used. Just we don't stipulate to the extent and exactly what dates, etc., but we do stipulate that there was competition that would violate that contract, if that contract is valid and is between the appropriate parties and has not expired.

8

to the case, Mr. O'Connor contends, is violative of La.Civ.Code art. 1853, which provides:

**Art. 1853    Judicial confession**

A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it.

A judicial confession is indivisible and it may be revoked only on the ground of error of fact.

The record reflects Mr. Trost's confusion as to what entity was operating Lake Area Insulation, Drywall and Painting during any given period of time. He explained that he had only recently become aware of the distinction between his individual operations and those of Lake Area Supply, Inc. He explained that he felt that they were all his "sole proprietorship" as "everything flowed back through my personal income tax." The trial court was free to determine that this lack of understanding of the legal and accounting aspects of his businesses did not constitute the type of "confession" described in Article 1853. The trial court was aware of any inconsistencies and was able to assign the appropriate weight to Mr. Trost's testimony in making applicable legal and factual determinations.

In sum, the record supports a finding that Mr. O'Connor entered into a noncompetition agreement with Lake Area Insulation, Drywall and Painting. Whether the agreement was entered into at the time the business was operated by Mr. Trost personally or after he transferred its operations to the corporation of which he is the sole shareholder, Lake Area Supply, Inc., the business known as Lake Area Insulation, Drywall and Painting continued. Mr. O'Connor has stipulated that he competed insofar as that term is used in the agreement. Accordingly, the trial court's determination is supported by the record.

**DECREE**

For the foregoing reasons, the decision of the trial court is affirmed. All costs of this appeal are assigned to the defendant, Donald O'Connor.

**AFFIRMED.**