# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 06-1281


**ROBERT BUTCH TROST, SR., ET AL.**

**VERSUS**

**DONALD O'CONNOR, ET AL.**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 03-3741
HONORABLE DAVID KENT SAVOIE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**ULYSSES GENE THIBODEAUX**
**CHIEF JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Glenn B. Gremillion, Judges.

> **AFFIRMED AND REMANDED FOR THE TRIAL COURT'S DISPOSITION OF THE CONTEMPT JUDGMENT.**

James Buckner Doyle
4809 Ihles Road
Lake Charles, LA 70605
Telephone: (337) 474-9989
COUNSEL FOR:
> Defendants/Appellants - Donald O'Connor, Complete Insulation, Drywall, and Painting, LLC, and Complete Drywall and Paint, LLC

Oliver Jackson Schrumpf
Law Offices of Oliver "Jackson" Schrumpf and Charles Schrumpf (APLC)
3801 Maplewood Drive
Sulphur, LA 70663
Telephone: (337) 625-9077
COUNSEL FOR:
> Secondary Plaintiffs/Appellants - Robert Butch Trost, Sr. and Lake Area Supply, Inc., d/b/a Lake Area Insulation, Drywall and Paint

**THIBODEAUX, Chief Judge.**

Defendants, Donald O'Connor, and the corporations he formed, Complete Insulation, Drywall, and Painting, LLC, and Complete Drywall and Paint, LLC (Mr. O'Connor), appeal the trial court's judgment awarding damages to the plaintiffs, Robert Butch Trost and his business entity, Lake Area Supply, d/b/a Lake Area Insulation, Drywall, and Painting (Mr. Trost), as a result of Mr. O'Connor's violation of a valid non-compete agreement. The trial court also determined that Mr. O'Connor had intentionally violated a November 2003 preliminary injunction, and reinstated a jail sentence imposed upon Mr. O'Connor that had been suspended. For the following reasons, we affirm the trial court's judgment and remand for implementation of the suspended jail sentence as amended by the trial court.

I.

**ISSUE**

The following issues are properly raised for this court's consideration:

1. Should this Court decline to apply the "law of the case" doctrine and reconsider its own ruling in this same case in which it was adjudged that the non-compete agreement between the parties was valid, because that decision was either palpably erroneous or its application would create manifest injustice?

2. Did the trial court err when it declared the sale of one of Mr. O'Connor's corporations to his brother a "sham"?

3. Did the trial court err by applying an incorrect method for the calculation of damages?

4. Did the trial court err when it reinstated the previously suspended jail sentence because it found Mr. O'Connor had violated the terms of his probation by continuing to intentionally violate the preliminary injunction, even though that jail

sentence could be avoided by paying the damage award owed to Mr. Trost in $25,000.00 monthly installments?

Mr. Trost has filed an appeal asking that we reinstate the previously suspended jail sentence that was reimposed by the trial court because of Mr. O'Connor's intentional violation of the November 2003 preliminary injunction issued in this case. The reimposition of the suspended sentence was set aside by this court in the writ decision responding to Mr. O'Connor's writ application. *Trost v. O'Connor*, CW 06-964. Mr. Trost has also asked this Court to award him an additional sum of money as attorney fees for defending this appeal.

## II.

## FACTS

Mr. Trost is in the business of contracting with homeowners and builders to supply insulation, drywall installation, and painting services. While other artisans in the drywall business in southwest Louisiana provided some part of the services covered by Mr. Trost's business, his was the only corporation to provide all of these services by one contractor.

In 1998, he hired Mr. O'Connor as an independent contractor. In July of 2001, as part of ongoing employment negotiations between the parties, Mr. O'Connor signed a document entitled Independent Contractor Agreement and Covenant Not to Compete. In particular, the document contained the following language:

> I further agree that I will refrain from carrying on or engaging in the business of drywall installation, estimating, insulation, painting or related activities or from soliciting customers of LAKE AREA INSULATION, DRYWALL, & PAINTING within a 75 mile radius of Lake Charles, Louisiana, and to include Calcasieu Parish, Allen Parish, Beauregard Parish, and Cameron Parish, Louisiana, within

2

two years from termination date of this contract with LAKE AREA INSULATION, DRYWALL & PAINTING.

I further agree and understand that if I violate any portion of this agreement, that I will pay to LAKE AREA INSULATION, DRYWALL, & PAINTING all damages sustained by them and any lost profit for which they have been deprived by my failure to comply with this agreement.

Additionally, I agree that a Court may enjoin me from soliciting, engaging in a business similar to that of LAKE AREA INSULATION, DRYWALL, & PAINTING, or providing the names or amounts of bids of any clients of LAKE AREA INSULATION, DRYWALL, & PAINTING, in accordance with this agreement.

On July 7, 2003, Mr. O'Connor called Mr. Trost and offered to purchase his business for $75,000.00. Mr. Trost's business was earning well over $1,000,000 per year in gross income. When Mr. Trost refused the offer, Mr. O'Connor stated that he would no longer be working for Mr. Trost. When Mr. Trost arrived at his office later that morning, he found that many of his client files were missing.

In an effort to stop Mr. O'Connor from taking his clients and his business, Mr. Trost filed suit in district court to enjoin Mr. O'Connor from competing in violation of the non-compete agreement he had signed in 2001. A temporary restraining order issued, based on the stipulation of both parties. That temporary restraining order became a preliminary injunction by order of the court in August of 2003. Our court affirmed the issuance of that injunction:

> enjoining and restraining Mr. O'Connor "from carrying on or engaging in his own competing business and/or from soliciting customers" of Robert Trost, d/b/a Lake Area Insulation, Drywall and Painting, for the two-year period subsequent to July 7, 2003 and within a seventy-five-mile radius of Lake Charles. The record indicates that the preliminary injunction was entered into pursuant to stipulation of the parties.

*Trost v. O'Connor*, 04-1172, pp. 1-2 (La.App. 3 Cir. 2/2/05), 893 So.2d 974, 975-76 (footnote omitted), *writ denied*, 05-512 (La. 4/22/05), 899 So.2d 575.

3

In the meantime, Mr. O'Connor was actively seeking employment as a drywall contractor and painter. He formed a limited liability corporation (LLC) called Complete Drywall, Insulation, and Painting, and asked a friend of his wife to sign the Articles of Organization as the sole member/manager. When that did not seem to work, Mr. O'Connor formed another LLC entitled Complete Drywall and Paint. He signed the Articles of Organization for this LLC, and continued to actively seek business in the Lake Charles area from clients of his former employer.

Mr. O'Connor was found to be in contempt of court in November of 2003 for violating the preliminary injunction. The trial judge sentenced Mr. O'Connor to one year in the parish jail. He then suspended all but 25 days of that sentence. Mr. O'Connor actually served about 11 or 12 days, and was then released. He was placed on probation for a year and a half.

When he was released from jail, Mr. O'Connor transferred the ownership of Complete Drywall and Painting to his brother, Robert, for $100.00 and "other valuable consideration."

In February of 2004, a hearing was held on Mr. Trost's petition to have the preliminary injunction made permanent. The court granted a permanent injunction enjoining Mr. O'Connor from competing with Mr. Trost's business in violation of the non-compete agreement until July 7 of 2005 – two years from the date his employment with Mr. Trost ended.

Mr. O'Connor filed an appeal of that judgment with this court. The judgment of the trial court was affirmed. *See Trost v. O'Connor*, 893 So.2d 974. His writ application was denied.

A hearing was held on June 1, 2006, on the issue of damages, which remained unresolved because the February 2004 hearing was too lengthy to cover all

4

issues. Mr. Trost had also filed another rule for contempt against Mr. O'Connor, alleging that he had violated the permanent injunction and requesting that the previously suspended jail sentence be reinstated in that Mr. O'Connor had once again violated the preliminary injunction, even after having spent time in jail for his previous violation.

The trial judge heard testimony from witnesses for both parties, including Dr. Stephen Caples, a professor of economics who both parties stipulated would be accepted as an expert witness on the issue of economics. Judgment was rendered in favor of Mr. Trost, finding that Mr. O'Connor owed him $470,000.00 in damages. The previously suspended jail sentence was reinstated because of Mr. O'Connor's intentional violation of the terms of the preliminary injunction.

However, the jail sentence had an 'out' clause. Mr. O'Connor could avoid serving time in jail if he paid in full the entire damage award to Mr. Trost. The court set up a payment plan. Mr. O'Connor was to begin paying the damage award in $25,000.00 monthly installments, the first due by 4:00 p.m. the next day, Friday, June 2, 2006. Each ensuing monthly payment would have to be received by Mr. Trost or his attorney by 4:00 p.m. on the second day of the month. If Mr. O'Connor missed any of those monthly payments, he would have to serve the balance of what remained of the eleven months of his jail sentence.

Mr. O'Connor filed a supervisory writ with this court. He argued that the trial court order to either pay $25,000.00 within 24 hours of the June 1, 2006 hearing or face eleven months in jail did not allow him the opportunity to suspensively appeal that judgment without being subject to its penalties. We granted the writ in part, and reversed, vacated, and set aside that portion of the judgment which reimposed the suspended jail sentence.

Mr. O'Connor then filed this appeal, raising the above-outlined issues as constitutional, manifest or palpable error. Mr. Trost also filed an appeal, requesting that the previously suspended jail sentence be reimposed and for additional attorney fees for defending against the appeal filed by Mr. O'Connor.

III.

## LAW AND DISCUSSION

### Should this Court Apply the "Law of the Case" Doctrine or Reexamine the Validity of the Non-Compete Agreement?

When an appellate court is asked to review one of its own previous judgments in the same case, the "law of the case" doctrine is usually applied.

> This court explained the doctrine of "law of the case" in *Griggs v. Riverland Medical Center*, 98-256 (La.App. 3 Cir. 10/14/98), 722 So.2d 15, 19, *writ denied*, 99-0385 (La. 5/28/99), 735 So.2d 622:
>
> > The "law of the case" doctrine applies to prior rulings of the appellate court and/or supreme court in the same case. It applies to parties who were involved in the litigation at the time of the prior ruling and had their day in court. The doctrine provides that "an appellate court ordinarily will not reconsider its own rulings of law in the same case." *Sharkey v. Sterling Drug, Inc.*, 600 So.2d 701, 705 (La.App. 1 Cir.), *writs denied*, 605 So.2d 1099, 1100 (La.1992). The purposes of the doctrine are to avoid litigating the same issue again, promote consistency of result within the case, promote essential fairness to the parties, and judicial efficiency. *Cree Oil Co. v. Home Ins. Co.*, 94-1219 (La.App. 3 Cir. 3/8/95); 653 So.2d 620, *writ denied*, 95-1554 (La. 9/29/95); 660 So.2d 875. The "law of the case" is discretionary, being inapplicable to cases in which the prior decision was palpably erroneous or its application would result in manifest injustice. *Willett v. Premier Bank*, 97-187 (La.App. 3 Cir. 6/4/97); 696 So.2d 196.

6

*Gentry v. Biddle*, 05-61, p. 7 (La.App. 3 Cir. 11/2/05), 916 So.2d 347, 352.

Mr. O'Connor urges us to explore the validity of the non-compete agreement for a second time. Under the law of the case doctrine, we would only do so if the prior decision was palpably wrong or resulted in manifest injustice. *Id*. The validity of the non-compete agreement was the subject of the appeal filed by Mr. O'Connor in 2004. It was determined by this court in *Trost v. O'Connor*, 893 So.2d 974, that the non-compete agreement was valid. It was also determined that it was clear that Mr. O'Connor understood that he worked for Mr. Trost, and he did so on behalf of Mr. Trost and the different corporate names under which he operated. *Id.*

Mr. O'Connor filed a writ application with the Louisiana Supreme Court, asking that court to overturn our decision. His writ application was denied, as was his writ rehearing request. *Trost v. O'Connor*, 05-512 (La. 4/22/05), 899 So.2d 575, *writ not considered*, 05-512 (La. 6/24/05), 904 So.2d 745.

Mr. O'Connor has stipulated in the record on numerous occasions that he did indeed compete with Mr. Trost after terminating his services there as an independent contractor in violation of the non-compete agreement that he signed. There is a plethora of evidence in the record which shows that Mr. O'Connor knew the nature and meaning of the non-compete agreement. The document was witnessed by two other individuals. The document itself was examined by the trial court and this court and no errors of law were found. The non-compete agreement followed the requirements specified under La.R.S. 23:921(C).

We find no manifest injustice, nor any errors, palpable or obscure, in our previous decision. We choose not to reconsider the issue of the validity of the non-compete agreement.

7

## Did the Trial Court Err When it Declared the Sale of Complete Drywall and Paint to Mr. O'Connor's Brother a "Sham"?

When the trial judge determined that the sale of Complete Drywall and Paint to Robert O'Connor for $100.00 and "other valuable consideration" was a sham, he made a factual determination based on the testimony and evidence presented at trial. The factual determinations of the trial court will not be overturned absent manifest error. *Stobart v. State through Dep't of Transp. & Dev*., 617 So.2d 880 (La.1993).

Louisiana Revised Statutes 23:921 states that when an independent contractor signs a non-compete agreement, they are committing "to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer. . . ." La.R.S. 23:921(C). The non-compete agreement Mr. O'Connor signed stated that he would "refrain from carrying on or engaging in the business of drywall installation, estimating, insulation, painting or related activities or from soliciting customers of LAKE AREA INSULATION, DRYWALL, & PAINTING."

It appears that Mr. O'Connor was attempting to circumvent his contractual, legal, and court-ordered obligation not to compete when he sold his LLC to his brother after getting out of jail. He was imprisoned because he was directly competing with Mr. Trost, in violation of both the non-compete agreement and the preliminary injunction ordered by the trial court. At the time of the sale, the record reflects that the LLC owned a 26 foot truck, a forklift, had drywall supplies in a warehouse and at least $26,000.00 in the bank. The assets of the LLC also included all of the business being conducted at that time and the bills owed from those jobs, as well as the customer base.

Mr. O'Connor had earlier made an attempt to circumvent the terms of the non-compete agreement when he set up Complete Insulation, Drywall, and Painting. He asked his wife's friend if she would be willing to sign the Articles of Organization, making it seem as if Mr. O'Connor were not involved.

In the case of both LLCs, Mr. O'Connor remained the main contact person and the main contractor for all of the work. His name and number were on the side of the corporate truck; his name and number were on the corporate business cards; and, he was the only person who knew all of the administrative in's and out's of the corporation's business and finances. Neither his brother nor his wife's friend could answer any specific questions about either LLC's bank accounts, staffing, or customer base.

We find no error in the trial court's factual determination that the sale of Complete Drywall and Paint to Robert O'Connor was a sham.

**Did the Trial Court Commit Manifest Error<br>in its Calculation of Damages?**

Mr. O'Connor alleges that the trial court used an incorrect method to calculate the amount of damages owed to Mr. Trost. An appellate court must give much discretion to the damage award assigned by the trial court. "The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the 'much discretion' of the trier of fact." *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1260 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059 (1994).

Mr. O'Connor argues that the trial court abused its much discretion by determining that the entire amount awarded against Mr. O'Connor during the eleven

month period for which Mr. Trost has asked for damages was at the expense of Mr. Trost.

Mr. Trost called Dr. Stephen C. Caples as an expert. Dr. Caples was stipulated to by both parties as an expert in the field of economics, and both parties also stipulated to his certification as an expert witness in that field. Dr. Caples looked at the Hibernia bank account for Complete Drywall and Paint. He used the monthly gross receipts to calculate the basic profit earned by the LLC during the eleven month period. Complete Drywall and Paint deposited an average of $253,633.00, or more than $3,000,000 for the year. He then interviewed Mr. Trost to learn what the typical profit percentage is for the drywall business. Using a fifteen percent profit, he multiplied the gross monthly receipts by that amount to yield a loss of profit to Mr. Trost of between $586,697.00 and $782,263.00.

The trial judge awarded $470,000.00 in damages to Mr. Trost for lost profits due to Mr. O'Connor's intentional violation of the non-compete agreement. The only testimony heard on this issue was from Dr. Caples. Mr. O'Connor neither offered any witness to rebut this expert, nor did he provide any contrary evidence. Under the Louisiana Code of Evidence, a court is allowed to qualify a witness to assist it in the analysis of scientific or technical issues. "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." La.Code Evid. art. 702.

The trial court is free to assign whatever weight it deems appropriate to the testimony of expert witnesses subject to the manifest error standard of review on appeal. *Massie v. Deloach*, 04-1425 (La.App. 3 Cir. 3/2/05), 896 So.2d 1246, *writ*

*denied*, 05-786 (La. 5/6/05), 901 So.2d 1107. There was no abuse of the much discretion afforded the trial court by accepting Dr. Caples as an expert, or in accepting his opinion and using it to help form the damage award. The damage award of $470,000.00 to Mr. Trost is affirmed.

**Did the Trial Court Err by Reinstating the Previously Suspended
Jail Sentence for Contempt of Court for Violating the
Preliminary Injunction Issued in November of 2003?**

While Mr. O'Connor argues that he is appealing the reinstatement of his jail sentence by the trial court in June of 2006, he is really asking this court to review the judgment of the trial court issued on November 25, 2003.[1] In that judgment, he was sentenced to one year in jail for having been found in contempt of court because of his intentional and egregious behavior, flagrantly violating the court's preliminary injunction issued in August of 2003 which ordered him not to violate the valid non-compete agreement.

Louisiana Revised Statutes 13:4611(1)(b) gives a court the authority to assess penalties against those found guilty of violating a preliminary injunction:

> (b) For disobeying or resisting a lawful restraining order, or preliminary or permanent injunction, by a fine of not more than one thousand dollars, or by imprisonment for not more than twelve months, or both, except in juvenile courts and city courts, in which punishment may be a fine of not more than one thousand dollars or imprisonment for not more than six months, or both.[2]

---

[1]In June of 2006, the trial court reinstated the suspended jail sentence because it found that Mr. O'Connor had continued to violate the preliminary injunction. Judge Savoie effecuated and modified the November 25, 2003 contempt judgment by adding a purge clause: Mr. O'Connor could avoid jail by paying $25,000.00 per month to Mr. Trost as compensatory damages. He did not find Mr. O'Connor in contempt, nor did he sentence Mr. O'Connor to a new jail sentence.

[2]The legislature amended this statute subsequent to the trial court's November 2003 judgment. Now the maximum jail sentence allowed for violation of a lawful restraining order, preliminary, or permanent injunction is six months. 2006 La. Acts No. 653, § 1.

While its clear that the trial court was well within its authority under Louisiana law to impose a one-year suspended jail sentence, Mr. O'Connor challenges the trial court's judgment based on constitutional grounds.[3] Unfortunately for him, these arguments come too late.

---

[3]Mr. O'Connor argues that this contempt proceeding was criminal in nature, and therefore required the due process protections afforded by both the Louisiana and United States Constitutions, including the right to trial by jury and proof beyond a reasonable doubt instead of by a preponderance of the evidence.

The United States Supreme Court helped clarify in very clear terms how state courts can determine whether a contempt proceeding is criminal or civil in nature. In *Hicks on Behalf of Feiock v. Feiock*, 485 U.S. 624, 108 S.Ct. 1423 (1988), the distinction between civil and criminal contempt was explained:

> "If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court." *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441, 31 S.Ct. 492, 55 L.Ed. 797 (1911). The character of the relief imposed is thus ascertainable by applying a few straightforward rules. If the relief provided is a sentence of imprisonment, it is remedial if "the defendant stands committed unless and until he performs the affirmative act required by the court's order," and is punitive if "the sentence is limited to imprisonment for a definite period." *Id*. at 442, 31 S.Ct. at 498. If the relief provided is a fine, it is remedial when it is paid to the complainant, and punitive when it is paid to the court, though a fine that would be payable to the court is also remedial when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order.

*Id.* at 631-32, 1429.

In *Feiock*, we are instructed that it is not merely the categorization of the proceeding as criminal that makes it such. A court must look at the "substance of the proceeding and the character of the relief that the proceeding will afford." *Id*. at 631, 1429. Therefore, it is constitutionally valid to sentence a defendant to jail for having violated a valid court order if the following guidelines are followed in terms of determining the nature of proceedings and ensuing due process protections that must be adhered to:

> An unconditional penalty is criminal in nature because it is "solely and exclusively punitive in character." *Penfield Co. v. SEC*, 330 U.S. 585, 593, 67 S.Ct. 918, 922, 91 L.Ed. 1117 (1947). A conditional penalty, by contrast, is civil because it is specifically designed to compel the doing of some act. "One who is fined, unless by a day certain he [does the act ordered], has it in his power to avoid any penalty. And those who are imprisoned until they obey the order, 'carry the keys of their prison in their own pockets.'" *Id*. at 590, 67 S.Ct., at 921, quoting *In re Nevitt*, 117 F. 448, 461 (CA8 1902).

*Id*. at 633, 1430.

We note that our brethren in the second circuit interpreted this language from *Feiock* to mean that a suspended sentence will still be determinate in nature and not remedial unless there exists some kind of conditions or purge clause attached that would, in essence, dissolve that suspended sentence. *Long v. Hutchins*, 40,548 (La.App. 2 Cir. 12/14/05), 926 So.2d 556.

The Louisiana Code of Civil Procedure gives a party who feels that the judgment of the trial court contains errors between thirty and sixty days to appeal that judgment, depending on whether they seek a suspensive or devolutive appeal respectively.[4]

Mr. O'Connor is asking this court to accept an appeal from a final judgment that was filed almost two and a half years after it was rendered. This court does not have that authority.

---

[4]If seeking a suspensive appeal, La.Code Civ.P. art.2123 provides in pertinent parts:

Art. 2123. Delay for taking suspensive appeal

A. Except as otherwise provided by law, an appeal that suspends the effect or the execution of an appealable order or judgment may be taken, and the security therefor furnished, only within thirty days of any of the following:

(1) The expiration of the delay for applying for a new trial or judgment notwithstanding the verdict, as provided by Article 1974 and Article 1811, if no application has been filed timely.

(2) The date of the mailing of notice of the court's refusal to grant a timely application for a new trial or judgment notwithstanding the verdict, as provided under Article 1914.

. . . .

If seeking a devolutive appeal, La.Code Civ.P. art. 2087 provides in pertinent parts:

Art. 2087. Delay for taking devolutive appeal

A. Except as otherwise provided in this Article or by other law, an appeal which does not suspend the effect or the execution of an appealable order or judgment may be taken within sixty days of any of the following:

(1) The expiration of the delay for applying for a new trial or judgment notwithstanding the verdict, as provided by Article 1974 and Article 1811, if no application has been filed timely.

(2) The date of the mailing of notice of the court's refusal to grant a timely application for a new trial or judgment notwithstanding the verdict, as provided under Article 1914.

. . . .

### Mr. Trost's Issues on Appeal

Mr. Trost asks that we reinstate that part of the trial court's judgment that reimposed Mr. O'Connor's suspended jail sentence. We remand this issue to the trial court, so that the jail sentence can be implemented in accordance with the guidelines outlined in footnote 2 of this opinion.

We also award Mr. Trost an additional $4,000.00 in attorney fees for defending this appeal.

IV.

### CONCLUSION

We decline Mr. O'Connor's entreaty to suspend the "law of the case" doctrine and reexamine our previous judgment finding that the non-compete agreement that he signed was valid. We also find that the trial court committed no error when it determined that the sale of Complete Drywall and Paint to Mr. O'Connor's brother Robert was a sham. Additionally, there was no manifest error in the method used by the trial court to determine the amount of damages owed to Mr. Trost by Mr. O'Connor for his intentional violation of the valid non-compete agreement. Mr. O'Connor owes Mr. Trost $470,000.00 in damages.

We remand this case to the trial court for disposition of the jail sentence and damage award associated with the contempt judgment and for violation of the non-compete agreement. We award Mr. Trost an additional $4,000.00 for defending this appeal. All costs of this appeal are assessed to Defendant/Appellant, Donald O'Connor.

**AFFIRMED AND REMANDED FOR THE TRIAL COURT'S DISPOSITION OF THE CONTEMPT JUDGMENT.**