966 So.2d 1087 (2007)
REGIONAL UROLOGY, L.L.C., et al., Plaintiffs-Appellees
v.
David T. PRICE, M.D. and David T. Price, M.D., A Professional Medical Corporation, Defendants-Appellants.
No. 42,789-CA.
Court of Appeal of Louisiana, Second Circuit.
September 26, 2007.
Rehearing Denied October 18, 2007.
*1089 Breazeale, Sachse & Wilson, L.L.P. by Claude F. Reynaud, Jr., Jude C. Bursavich, Jeanne C. Comeaux, Baton Rouge, for Appellants.
Cook, Yancey, King & Galloway, by Sidney E. Cook, Jr., Shreveport, for Appellees.
Before BROWN, STEWART and DREW, JJ.
STEWART, J.
Defendants, David T. Price, M.D., and David T. Price, M.D., A Professional Medical Corporation, appeal a judgment in favor of plaintiffs, Regional Urology, L.L.C., et al., enforcing a noncompetition and non-solicitation agreement against Dr. Price, individually. Finding that the agreement meets statutory requirements and is binding on Dr. Price, individually, we affirm.

FACTS
Dr. Price began practicing with Regional Urology on September 11, 2001, by entering into a Service Agreement purporting to be between Regional Urology, L.L.C., and David T. Price, M.D., A Professional Medical Corporation. Under the Service Agreement, Dr. Price's corporation was an independent contractor, and all services were to be performed by Dr. Price.
On June 1, 2005, Dr. Price and the other thirteen physicians who had Service Agreements with Regional Urology signed the following amendment:

AMENDMENT TO SERVICE AGREEMENT
WHEREAS, the Members of Regional Urology, L.L.C., have decided to amend the Service Agreement for each of its Members, listed hereinbelow; and
WHEREAS, this Amendment is to be signed by each entity which is a Member.
NOW, THEREFORE, BE IT AGREED:
A new paragraph 6 F is hereby added to each Service Agreement:
F. In the event of termination of this Agreement for any reason, neither Physician, Physician Corporation, nor Physician Company shall perform any duties as a urologist or perform any urological procedures, either individually or as the employee, owner, or equity interest holder of any entity within the Parishes of Caddo and Bossier, Louisiana, for a period of two (2) years following such termination. Further, in the event of termination of this Agreement for any reason, Physician, Physician Corporation, and Physician Company *1090 shall not solicit any patients of the Company, either individually or as the employee, owner, or equity interest holder, of any entity within the Parishes of Caddo and Bossier, Louisiana, for a period of two (2) years following such termination. Physician, Physician Corporation, and Physician Company agree that in the event of a breach or threatened breach of any portion of this paragraph, irreparable harm and damage will be done to the Company. Accordingly, Physician, Physician Corporation, and Physician Company agree that, in such event, the Company shall be entitled to seek an injunction or restraining order to restrain and enjoin such breach or threatened breach by Physician and/or Physician Corporation and/or Physician Company. The Company shall also be entitled to recover monetary damages a (sic) result of the breach of this paragraph by Physician and/or Physician Corporation and/or Physician Company.
(2) The second and third sentence of Paragraph 7 of each Service Agreement is hereby deleted.
(3) These changes shall apply to any physician who is a Member, any corporation which is a Member or any physician's L.L.C. which is a Member of Regional Urology, L.L.C.
As is shown by the signature pages to this amendment, the fourteen Members of Regional Urology were all either professional corporations or L.L.C.'s. Each physician, including Dr. Price, signed on behalf of his business entity.
The relationship between Regional Urology and Dr. Price ended on June 1, 2007. On June 2, 2007, Dr. Price filed articles of incorporation for a new entity, David Price, M.D., L.L.C., domiciled in Claiborne Parish.
Two days later, Regional Urology filed suit to enforce the non-compete and non-solicitation clauses in the Amendment to the Service Agreement.[1] The petition alleged that Dr. Price was performing urological procedures in Caddo and/or Bossier Parish and soliciting patients of Regional Urology in violation of the Amendment to the Service Agreement. Injunctive relief was sought to prohibit Dr. Price from engaging in these activities in the parishes of Caddo and Bossier for a period of two years.
In his defense, Dr. Price alleged that, because he had not signed in his individual capacity, the Amendment to the Service Agreement could not be enforced against him individually, or against his new L.L.C. He also alleged that the Agreement was overly broad and lacked the required geographical limitation. Finally, he asserted that enforcement of the Amendment would violate public policy.
The parties filed competing affidavits in support of their positions. The trial court granted Dr. Price's motion in limine to exclude parol evidence regarding the intent of the parties. Regional Urology filed its own motion in limine to exclude evidence pertaining to Dr. Price's public policy argument. The trial court denied this motion, but declined to address policy considerations, which it considered a legislative matter. Regional Urology also filed a motion to strike the affidavit of Sara Burroughs, which was offered by Dr. Price in support of his argument regarding the lack *1091 of geographical limitation. Burroughs' affidavit was stricken as untimely.
By agreement of the parties, the hearing on June 29, 2007, addressed the merits of permanent injunctive relief. The trial court ruled in favor of Regional Urology upon finding the Amendment to the Service Agreement to be clear, in compliance with statutory requirements, and binding on Dr. Price individually.
A judgment was signed on July 6, 2007, enjoining David T. Price, M.D., A Professional Medical Corporation and David T. Price, M.D., "either individually or as the employee, owner, or equity interest holder of any entity," from soliciting patients of Regional Urology and from performing urological procedures or duties as a urologist in the parishes of Caddo and Bossier for a period of two (2) years from June 1, 2007, through May 31, 2009. A separate judgment set forth the trial court's rulings on the evidentiary motions. This appeal followed.

DISCUSSION
Historically, Louisiana's public policy has disfavored noncompetition agreements. SWAT 24 Shreveport Bossier, Inc. v. Bond, XXXX-XXXX, p. 4-5 (La.App.2d Cir.6/29/01), 808 So.2d 294, 298. This policy is reflected in La. R.S. 23:921(A)(1), which provides that contracts or agreements restraining anyone from exercising a lawful profession, trade, or business shall be null and void. However, there are statutory exceptions which allow for noncompetition agreements.
La. R.S. 23:921 C provides the exception relevant to this matter:
C. Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment. An independent contractor, whose work is performed pursuant to a written contract, may enter into an agreement to refrain from carrying on or engaging in a business similar to the business of the person with whom the independent contractor has contracted, on the same basis as if the independent contractor were an employee, for a period not to exceed two years from the date of the last work performed under the written contract.
Under this provision, an independent contractor may enter agreements not to compete and not to solicit customers within a specified geographical area for a period of no more than two years. The exceptions set forth in La. R.S. 23:921 C must be strictly construed, and agreements confected pursuant to this provision must strictly comply with its requirements. SWAT 24, supra; Kimball v. Anesthesia Specialists of Baton Rouge, Inc., XXXX-XXXX, p. 7 (La.App. 1st Cir.9/28/01), 809 So.2d 405, 411, writs denied, XXXX-XXXX (La.3/8/02), 811 So.2d 883 and XXXX-XXXX (La.3/8/02), 811 So.2d 886; Francois Chiropractic Center v. Fidele, 630 So.2d 923, 926 (La.App. 4th Cir.1993).
A noncompetition agreement is a contract between the parties who enter it, and it is to be construed according to the general rules of contract interpretation. SWAT 24, supra. The common intent of the parties is used to interpret a contract. La. C.C. art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation *1092 may be made in search of the parties' intent. La. C.C. art. 2046. Both parties state that the terms of the Amendment are clear and unambiguous.
When a contract may be interpreted from the four corners of the agreement, without consideration of extrinsic evidence, the interpretation is a matter of law. ScenicLand Construction Co., L.L.C. v. St. Francis Medical Center, Inc., 41,147 (La.App.2d Cir.7/26/06), 936 So.2d 251; NAB Natural Resources, L.L.C. v. Willamette Industries, Inc., 28,555 (La.App.2d Cir.8/21/96), 679 So.2d 477. In such cases, appellate review considers whether the trial court was legally correct or legally incorrect. Lawrence v. Terral Seed, Inc., 35,019 (La.App.2d Cir.9/26/01), 796 So.2d 115, writ denied, XXXX-XXXX (La.2/1/02), 808 So.2d 341.
Dr. Price argues that the noncompetition and nonsolicitation provisions may not be asserted against him individually, because only "Members" of Regional Urology were required to sign the Amendment and because the Amendment language states that the changes to the Service Agreement apply only to physicians, physician's L.L.C.'s, and corporations who are "Members" of Regional Urology.
The obvious purpose or intent of the Amendment is to prevent the physicians of Regional Urology from opening competing practices in the event of terminating their contractual relationship, as apparently happened in this matter. If the Amendment is interpreted as proposed by Dr. Price, it would have no effect. The record shows that all of the "Members" of Regional Urology are listed as either physician's professional medical corporations or L.L.C.'s. Each Member could end ties with Regional Urology and open his own practice as an individual or in the name of a new corporation or company, as attempted by Dr. Price. The clear language of the contract, when considered in light of its obvious purpose, does not support Dr. Price's interpretation. We are bound to give legal effect to the contract according to the true intent of the parties. La. C.C. art. 2045; ScenicLand Const., supra.
The Amendment states that the "Members" of Regional Urology decided to amend their Service Agreements, that "each entity which is a Member" must sign the Amendment, and that the "changes shall apply to any physician who is a Member, any corporation which is a Member or any physician's L.L.C., which is a Member of Regional Urology, L.L.C." Clearly, the Amendment was agreed to by the Members, applies to the Members, and was signed by the Members. However, the language that prohibits competition and solicitation of patients upon termination does not limit the restriction to Members only. The language specifies that the Physician, Physician Corporation, and Physician Company shall not perform any duties as a urologist or urological procedures and shall not solicit patients for the two year period. The clear and unambiguous language of the Amendment reflects the obvious intent of the parties in confecting the agreement. The language prohibits the individual physicians as well as their corporations and companies from competing with Regional Urology or soliciting its patients for two years after termination. By signing the Amendment on behalf of his professional medical corporation, Dr. Price bound both David T. Price, M.D., A Professional Medical Corporation and himself under the clear and unambiguous language of the Amendment.
Under the Service Agreement, Dr. Price's medical corporation is designated the independent contractor. Dr. Price argues that because he, individually, was neither an employee or independent contractor of Regional Urology, he is not among *1093 the limited class of persons or entities against whom La. R.S. 23:921 permits restrictions against competition. We find no merit in this argument.
A juridical person, such as a corporation, is distinct from its members. La. C.C. art. 24. However, the privilege of separate corporate identity is not without limits. Glazer v. Commission on Ethics for Public Employees, 431 So.2d 752, 757-758 (La.1983). Courts have found it appropriate to disregard the corporate entity, or "pierce the corporate veil" in cases where observing the fiction of a separate identity would result in inequity, fraud, or some wrong. Id. Whether to disregard the corporate entity should involve a "study of the just and reasonable limitations upon the exercise of the privilege of separate capacity under the particular circumstances in view of its proper use and functions." Id. Competing policies supporting the recognition of a separate corporate existence and those justifying piercing must be weighed to determine if there is some misuse of the corporate privilege or other justification for limiting it under the facts of a particular situation. Id.
"Professional medical corporations" are corporations organized for the purpose of practicing medicine. La. R.S. 12:901. Only natural persons who are duly licensed to practice medicine in this state may form a professional medical corporation. La. R.S. 12:902. Moreover, only shareholders in such corporations who are duly licensed to practice medicine in this state, or another professional medical corporation, may vote the shares and participate in earnings; other shareholders have no voting rights and shall not participate in the earnings or any other affairs of the corporations, except as provided for by R.S. 12:913(B) in the event of the death of a shareholder. La. R.S. 12:905 and 12:906.
Both the language of the Amendment and the laws governing professional medical corporations recognize that, although Regional Urology's Members are professional medical corporations or L.L.C.'s, the physicians are the controlling parties behind their corporate identities. The individual physicians, not their corporations or L.L.C.'s, are the public face of Regional Urology. The physicians provide all the services on behalf of their corporations and for the benefit of Regional Urology under their Service Agreements. We assume there are benefits related to taxation, business management, and protection in the event of liability that make the formation of a professional medical corporation desirable to a physician or a group of affiliated physicians. Maintaining the professional corporation's separate identity would be necessary to preserve the benefits that stem from corporate existence. However, we find no policies or considerations that would require us to maintain that separateness between Dr. Price and his professional medical corporation with regard to the Amendment voluntarily agreed to in good faith by the Members of Regional Urology for the purpose of preventing any of them from competing with Regional Urology upon termination of their contractual arrangements.
In Trost v. O'Connor, XXXX-XXXX (La. App. 3d Cir.4/4/07), 955 So.2d 246, Mr. O'Connor, an independent contractor, signed a non-competition agreement and then tried to avoid the obligation not to compete by forming L.L.C.'s and even selling one to his son in a effort to avoid the imposition of a permanent injunction. He was not successful. The courts recognized Mr. O'Connor's actions as attempts to circumvent his contractual obligations.
Dr. Price's formation of a new L.L.C. in Claiborne Parish immediately upon termination of his relationship with Regional *1094 Urology and his argument that he is not individually bound because his professional medical corporation was the independent contractor are attempts to circumvent his contractual obligations under the noncompetition agreement. Just as the court in O'Connor recognized that Mr. O'Connor was the controlling party behind the L.L.C.'s he formed, we recognize that Dr. Price is the controlling party with regard to his medical practice, regardless of its formation as a corporate entity. It is the intent of the Amendment to the Service Agreement to restrict Dr. Price, or any other physician associated as a Member with Regional Urology, from competing with Regional Urology in the parishes of Caddo and Bossier by forming his own urological practice upon termination of his relationship with Regional Urology. Dr. Price cannot avoid his contractual obligation not to compete by establishing a corporate identity in another parish as a means to continue practicing in Caddo or Bossier. By voluntarily signing the Amendment, Dr. Price and his professional medical corporation agreed to its provisions. Considering the clear language of the Amendment, the language of the Service Agreement requiring the services of Dr. Price only, and the requirement of good faith under La. C.C. art. 1759, we find that Dr. Price, individually, is bound by the noncompetition and non-solicitation provisions of the Amendment.
Dr. Price next argues that the noncompetition agreement fails for lack of a geographical limitation. As required by La. R.S. 23:921 C, a noncompetition agreement must specify the parishes or municipalities in which the agreement is to have effect. Vartech Systems, Inc. v. Hayden, 2005-2499 (La.App. 1st Cir.12/20/06), 951 So.2d 247, Kimball v. Anesthesia Specialists of Baton Rouge, Inc., supra; Medivision Inc. v. Germer, 617 So.2d 69 (La.App. 4th Cir.1993), writ denied, 619 So.2d 549 (La.1993).
At first glance, the Amendment language clearly appears to specify the parishes  Caddo and Bossier  to which the noncompetition and nonsolicitation provisions apply. However, Dr. Price asserts that the lack of a comma after "entity" in the sentences prohibiting competition and solicitation of patients means that the phrase "within the Parishes of Caddo and Bossier, Louisiana" modifies or describes "entity" and does not set forth a geographical limitation. Dr. Price seeks to apply the rule of the last antecedent, which limits the modifying phrase to the word right before it. In support of his argument, Dr. Price offered the affidavit of Sara Burroughs, who analyzed the sentence structure. The trial court struck the affidavit as untimely.
The last antecedent is a rule of statutory construction. Fosscett v. Lake Charles Municipal Fire and Police Civil Service Board, 125 So.2d 44 (La.App. 3d Cir.1960). However, the rule should apply only where there are uncertainties or ambiguities, when other rules of construction fail, and when the intent of the legislature (or contracting parties, as in this case) is unclear. Id. See also 82 C.J.S. Statutes, § 334, at 670. In construing statutes, the Louisiana Supreme Court has explained that punctuation cannot control construction if it goes against the real intent of the legislature and that the rule of the last antecedent "will not be adhered to where extension to a more remote antecedent is clearly required by consideration of the entire act." Buras v. Fidelity & Deposit Co. of Maryland, 197 La. 378, 385, 1 So.2d 552, 554 (La.1941); State v. Anderson, 540 So.2d 974 (La.App. 2d Cir.1989), writ denied, 544 So.2d 398 (La.1989), cert. denied, 493 U.S. 865, 110 S.Ct. 185, 107 L.Ed.2d *1095 140 (1989). These same principles can be applied to contractual interpretation.
Moreover, the Supreme Court has addressed the interpretation of contracts as follows:
The rule of strict construction does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists, nor does it authorize the court to make a new contract for the parties or disregard the evidence as expressed, or to refine away terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties. . . .
Commercial Union Ins. Co. v. Advance Coating Co., 351 So.2d 1183, 1185 (La. 1977).
Review of the Amendment reveals neither ambiguities nor uncertainties about the meaning and intent of the parties. The rule of strict construction does not authorize us to apply the rule of the last antecedent to reach a result that would be contrary to the clear intent of the parties as shown by the unambiguous language of the Amendment. The obvious intent of the Amendment is to prohibit the physicians who are Members of Regional Urology through their professional medical corporations or L.L.C.'s from practicing urology or soliciting patients "either individually or as the employee, owner, or equity interest holder of any entity" in Caddo or Bossier Parish for two years following termination. The Amendment is in compliance with the requirements of La. R.S. 23:921 C. It clearly specifies an appropriate geographical limitation. Even considering the affidavit of Sara Burroughs, the rules of contractual interpretation would lead to the same result.
Lastly, Dr. Price argues that we should nullify the noncompetition and non-solicitation agreement between the Members of Regional Urology for being against public policy. This we decline to do. The considerations raised by Dr. Price are compelling, particularly concerning the freedom patients should have to obtain treatment from a physician of their own choosing. However, these considerations were apparent when Dr. Price and the other physicians of Regional Urology signed the Amendment and put their own material concerns above that of patient choice. We find nothing in Louisiana's public policy that would require us to nullify the agreement at issue. The policy concerns raised by Dr. Price are, as observed by the trial court, a matter for the legislature to address.

CONCLUSION
For the reasons stated, we affirm the trial court's judgment and assess costs of appeal to the appellant.
AFFIRMED.
BROWN, C.J., dissents with written reasons.
BROWN, C.J., dissenting.
After a lengthy discussion of contracts, the majority opinion in one sentence brushes aside the public policy issue.
As stated by the majority, restrictive covenants not to compete are generally disfavored as a restraint of trade. This disfavor is even greater when noncompetition agreements implicate important public concerns. For example, ethical rules governing the practice of law forbid employment agreements restricting rights of lawyers to practice their trade. Louisiana State Bar Association Rules of Professional Conduct, Rule 5.6, La. R.S. foll. 37:222. Access to legal representation is an important public policy. Clients have the right to choose an attorney that they trust to represent their interest. Noncompetition *1096 agreements would violate these ethical standards.
The American Medical Association ("AMA") has emphasized that noncompetition restrictions on the practice of medicine impact health care and are not in the public interest. More practicing physicians provide greater access to health care and increased competition improves the quality and affordability of health care. Noncompetition agreements negatively influence the availability of quality medical care.
In respect to such restrictions, I see no practical difference between the practice of law and the practice of medicine. Both involve a relationship between the professional and the client/patient that goes beyond providing goods or services. These relationships are consensual, highly fiduciary, and based on client/patient trust. Both require, at times, disclosure of private, confidential, and sensitive information. Faith and confidence in the doctor or lawyer is essential to effective treatment or service. Noncompetition or restrictive covenants have a destructive impact on these relationships.
I respectfully dissent.

APPLICATION FOR REHEARING
Before BROWN, C.J., and STEWART, PEATROSS, DREW and LOLLEY, JJ.
Rehearing denied.
BROWN, C.J., and PEATROSS, J., would grant rehearing.
NOTES
[1] The petition was filed by Regional Urology, L.L.C.; Regional Urology Ambulatory Surgery Center, L.L.C.; Urology Property Group, L.L.C.; Regional Urology Oncology and Radiation Treatment Center, L.L.C.; and Regional Urology Oncology and Radiation Property Group, L.L.C., Dr. Price and/or David T. Price, M.D., A Professional Medical Corporation were alleged to be members of all the Regional Urology entities.